655 So.2d 95 (1995)
Robert LARKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 78866.
Supreme Court of Florida.
May 11, 1995.
*97 Dwight M. Wells, Tampa, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Robert Larkins appeals his convictions for robbery and first-degree murder and his sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm Larkins' convictions, but reverse and remand for resentencing by the trial court with instructions consistent with this opinion with regard to the sentencing order.

FACTS
The facts set out herein are based on the evidence presented at trial. On August 30, 1994, the body of Roberta Faith Nicolas was found lying face down on the floor of a Circle K store. Debbie Santos, a customer in the store that day, testified that she was in the store with her baby and her young son when she saw a man with tape on his face walk in. Santos knew this man and identified him as Robert Larkins. She testified that he had tape on his nose, forehead, and each side of his face. He pointed a rifle at Ms. Nicolas, the store clerk, demanded money, and then shot her. Larkins then went over to the counter where the cash register was located, and backed out of the store. At some point during this episode, Santos' baby began to cry.
Another customer, Ruben Hernandez, was called by the defense and testified that the same man pointed a rifle at him and demanded money. The man's whole face was covered with tape. Hernandez responded that he had no money. The robber then demanded that the store clerk open the cash register, but it did not open, and the robber told the clerk to step away from the register. She did. When the clerk ducked down, the robber grabbed her by the arm and swung her to the side by some soda machines. Then he fired two shots at her.
When investigators arrived, they found the victim's body lying on the floor. The police also recovered a shell casing from a bullet for a .22 caliber rifle. Subsequently, a .22 caliber rifle was found on a nearby street next to a vacant house and adjacent to Larkins' home. Thomas Gibson testified that on the night of the robbery he had given Larkins this same .22 caliber rifle to hold for him. The spent bullet from the victim's body was identified by an expert as having been fired from this rifle. Larkins did not return the rifle to Gibson. In an alley behind the store, the police found a trail of dimes leading away in a northerly direction, and the store's cash register was found some 60 yards from the store. Ronnie and Charles Baker also saw Larkins with a rifle the night of the robbery. A jail inmate who shared a cell with Larkins testified that Larkins told him of committing the robbery and shooting.
The jury found Larkins guilty of robbery and first-degree murder. At the penalty phase, the State presented evidence that Larkins had previously been convicted of manslaughter and assault with intent to kill. Larkins presented the testimony of Dr. Henry L. Dee, a clinical psychologist, relating Larkins' personal history including substantial mental problems. He testified that Larkins suffers from organic brain damage and that he has a substantial memory impairment. Dr. Dee expressed the opinion that Larkins was under the influence of extreme emotional disturbance at the time the robbery occurred. He also stated that due to Larkins' brain damage, his ability to appreciate the criminality of his conduct "could be affected." The jury recommended that the death penalty be imposed by a 10-2 vote.
The trial court followed the jury's recommendation. In its sentencing order, the trial *98 court found two statutory aggravating circumstances: (1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person; and (2) the capital felony was committed for pecuniary gain.[1] The trial court acknowledged the testimony of Dr. Dee but found no statutory or non-statutory mitigating circumstances.

ISSUES AS TO GUILT
As his first issue, Larkins sets out a broad, general objection to the jury selection process. However, Larkins concedes that any potential error is procedurally barred because no adequate objections were made at trial. Larkins requests that this Court either explicitly hold that such issues may be the proper subject of a motion under Florida Rule of Criminal Procedure 3.850, or remand the case for an evidentiary hearing. We reject this request. On appeal we are limited to considering alleged errors properly preserved and to certain fundamental claims of error. No such claims are raised here.
As his second point, Larkins asserts that there was insufficient evidence to warrant his conviction for armed robbery and murder. It is well-settled that where a conviction rests on purely circumstantial evidence, a conviction will not be sustained "unless the evidence is inconsistent with any reasonable hypothesis of innocence." State v. Law, 559 So.2d 187, 188 (Fla. 1989). "[W]here there is substantial competent evidence to support the jury verdict" this Court will not reverse. Id. (citing Heiney v. State, 447 So.2d 210 (Fla. 1984), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984)). Here, there was direct evidence of Larkins' guilt, including eyewitness testimony. We have already discussed much of that evidence. Our review of the record reflects competent substantial evidence to support Larkins' convictions.
Third, Larkins argues that the trial court committed fundamental error when it failed to declare a mistrial. The trial court initially permitted the introduction of a pair of surgical gloves into evidence over Larkins' relevancy objection, and later ordered the gloves excluded from evidence when the State was unable to time them to the crime or Larkins.
While we agree that the initial introduction of the surgical gloves may have been error, we do not believe that the trial court was obligated to declare a mistrial on its own motion when it later granted the request to remove the gloves from evidence. Rather, at the time the gloves were withdrawn, defense counsel had an obligation to request and move for a mistrial if he believed such drastic relief was necessary. See Clark v. State, 363 So.2d 331 (Fla. 1978). Furthermore, as we expressly stated in Clark, "if the defendant ... does not move for a mistrial, he cannot, after trial, in the event he is convicted, object for the first time on appeal." Id. at 335. Larkins concedes that he did not seek a mistrial at trial. The trial court granted the relief sought by Larkins at trial and instructed the jury to disregard this evidence from their deliberations. For this reason, we find no error in the trial court's failing to act on its own to declare a mistrial.
Fourth, Larkins argues that the State was improperly allowed to introduce a gruesome photograph depicting the victim after she had been turned over lying in a pool of blood wearing her bloody smock. In admitting photographs, the primary focus should be relevancy. Wyatt v. State, 641 So.2d 355 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1372, 131 L.Ed.2d 227 (1995); Thompson v. State, 565 So.2d 1311, 1314 (Fla. 1990); § 90.402, Fla. Stat. (1993). We have upheld the admission of photographs to explain a medical examiner's testimony, to show the manner of death, the location of wounds, and the identity of the victim. See, e.g., Jackson v. State, 545 So.2d 260 (Fla. 1989) (admission of photographs depicting victim's charred remains is within discretion of trial court).
While a trial court should exercise caution in admitting particularly gruesome photographs, and in limiting their numbers, such photographs may still be relevant. Here, the record supports the State's assertion that the photograph was relevant to *99 assist the medical examiner in explaining the cause of death to the jury, as well as how and where the victim died. We conclude that the trial court did not abuse its discretion in admitting the photograph into evidence.
Next, Larkins argues that it was error to admit the victim's smock into evidence. Again, a determination of whether a certain piece of evidence is admissible should be made in the context of whether the evidence meets the relevancy test. Adams v. State, 412 So.2d 850 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982). Here the record reflects that the smock was used to explain the presence of a hole in the smock consistent with the entry of a small caliber bullet, as well as the entry into and track of the bullet through the victim's body. We find no abuse of discretion.
On his fifth point, Larkins argues that it was reversible error for the trial court to deny him the right to impeach two State witnesses by questioning them about pending charges. In Torres-Arboledo v. State, 524 So.2d 403, 408 (Fla.), cert. denied, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988), we said that "when charges are pending against a prosecution witness at the time he testifies, the defense is entitled to bring this fact to the jury's attention to show bias, motive or self-interest." Consistent with Torres-Arboledo, we agree that Larkins should have been permitted to inquire as to Charles and Ronnie Baker's pending charges. The question then becomes whether the error was harmless.
The strict standard announced in State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), is whether there is a reasonable possibility that the error complained of affected the verdict. Harmless error, as DiGuilio cogently pointed out, is not "a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence." Id. at 1139.
To evaluate the harmfulness of the error, we must first examine all of the evidence and consider the strength of the case against Larkins. For example, the State presented eyewitness testimony that Larkins was the robber. The jury also heard the testimony of Gibson, who testified that prior to the robbery he had given Larkins the identical gun used in the robbery-murder. Gibbons said that Larkins refused to return his gun, but instead offered to buy him a new one. In addition, Larkins' cellmate testified that Larkins had confessed to the shooting. There was other evidence, including evidence that Larkins was anxious to leave town right after the murder. In contrast, the two witnesses in question offered testimony that they had seen Larkins with a gun the night of the murder. In the proffer elicited on cross-examination, they both admitted pending charges but adamantly denied any conduct by the police to solicit their cooperation to testify. No evidence was proffered to challenge these assertions. In light of the overwhelming evidence of guilt and the questionable weight of the evidence of pending charges considered in the context of the other matters elicited in the proffer, we conclude that it was harmless error to deny cross-examination of the Bakers with regard to pending charges. We find that there is no reasonable possibility that the disclosure of this impeaching material would have affected the verdict.
Larkins next argues that it was error for the trial court to admit certain testimony by the same witness who testified that Larkins was anxious to leave town. However, because Larkins failed to preserve this issue by making the same objection below as he now asserts on appeal, his argument must fail. See Harmon v. State, 527 So.2d 182, 185 (Fla. 1988) (issue of whether evidence was improperly admitted was not preserved for appeal because defendant failed to make the same objection below as raised on appeal).

PENALTY PHASE ISSUES
Larkins claims the trial court erred in finding that the killing was done for pecuniary gain. See Clark v. State, 609 So.2d 513 (Fla. 1992) (finding killing for pecuniary gain where State established defendant's motive was to obtain victim's job). In Rogers v. State, 511 So.2d 526, 532 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), we explained that in *100 order to establish that the killing was committed for pecuniary gain, the evidence must show beyond a reasonable doubt that the killing was "a step in furtherance of the sought-after-gain." We find that the evidence described above of the robbery and killing of the store clerk supports beyond a reasonable doubt that the murder was committed for pecuniary gain. While there was some evidence from the mental expert that Larkins may have fired the gun due to stress, the trial court was still entitled to rely on the other evidence of a robbery to find this aggravator.
Next, Larkins asserts that certain statements made by both the State and the court regarding the jury's advisory role in the sentencing phase violated his constitutional rights. We disagree. Florida's standard jury instruction in capital cases instructs that the jury's role is advisory, but important. Notwithstanding Larkins' claim that the trial court and prosecutor denigrated the sentencing role of the jury, quite the contrary occurred. The record reflects that the trial court informed the jury: "It is only under rare circumstances the court would impose a sentence other than what you recommend." Therefore, we deny relief on this issue.
Larkins also argues that he received ineffective assistance of counsel and was denied equal protection because the trial judge refused to appoint two attorneys to represent him in this case. We disagree. In a recent decision, we rejected this precise argument. See Armstrong v. State, 642 So.2d 730 (Fla. 1994) (holding that "Appointment of multiple counsel to represent an indigent defendant is within the discretion of the trial judge."); see also Makemson v. Martin County, 491 So.2d 1109 (Fla. 1986), cert. denied, 479 U.S. 1043, 107 S.Ct. 908, 93 L.Ed.2d 857 (1987).
Larkins asserts that the trial court failed to prepare a sentencing order in accord with the requirements of Campbell v. State, 571 So.2d 415 (Fla. 1990), and also failed to consider statutory and non-statutory mitigating evidence. We agree.
Larkins emphasizes that he produced substantial evidence of mitigation, especially mitigation under section 921.141(6)(b), Florida Statutes (1993), which provides that: "The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance." For example, Dr. Dee, a clinical psychologist, testified as follows:
Defense Counsel: Based upon your testing, your evaluation, your analysis, and the results of your evaluations, did you come to an opinion as to whether Mr. Larkin would have been under the influence of any extreme emotional disturbance back ... when this offense occurred?
Dr. Dee: Well yes. As a matter of fact, I would say that he suffered both a mental and an emotional disturbance.
Although the brief sentencing order (two and one-half pages) refers to a portion of Dr. Dee's opinion (i.e., Larkins suffers organic brain damage, and his stressful condition may have caused him to fire the .22-rifle), the order does not explain whether it found any mitigating circumstances based on Dee's testimony.
Further, the order makes no mention of any of the other mitigating factors asserted by the defendant, including the claim of extreme mental and emotional distress. Instead, the trial court concluded that Dr. Dee was not of the opinion that Larkins' condition was of such a nature that the defendant lacked the capacity to appreciate the criminality of his act or to conform his conduct to the requirements of law. In fact, Dr. Dee testified that Larkins' organic brain disorder "impairs his capacity to control that conduct whatever he appreciates it to be."
During sentencing, defense counsel also relied on Dr. Dee's testimony to establish other non-statutory mitigating circumstances relating to Larkins' personal history. On appeal Larkins asserts that this testimony and other evidence established that: (1) Larkins' previous conviction was not murder but manslaughter; (2) he was a poor reader; (3) he experienced difficulty in school; (4) he dropped out of school at the fifth or sixth grade; (5) the offense was the result of impulsivity and irritability; (6) he drank alcoholic beverage the night of the incident; (7) *101 he functions at the lower 20% of the population in intelligence; (8) he came from a barren cultural background; (9) his memory ranks in the lowest one percent of the population; (10) he has chronic mental problems possibly caused by drugs and alcohol; (11) he is withdrawn and has difficulty establishing relationships. While most of these factors were identified in Dr. Dee's testimony, they were not all separately argued by counsel. However, the sentencing order reflects that the trial court summarily rejected all non-statutory mitigating circumstances: "Since no other mitigating circumstance can be gleaned from the record, the imposition of the death penalty is the appropriate sanction for the offense of First Degree Murder." This finding, as well as the lack of findings on statutory mitigation, is inconsistent with the evidence of mitigation contained in the record.
To clarify the statutory requirements for written findings in a sentencing order, we set forth instructions in Campbell for trial courts to follow in the hope of rectifying this serious and chronic problem. As Campbell instructs, the trial court must
expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature.
Id. at 419 (emphasis added) (footnote omitted). In light of Campbell, we find that Larkins' sentencing order is inadequate. For instance, the order does not "expressly evaluate ... each mitigating circumstance." Clearly, the bare-boned sentencing order fails to provide a sufficiently reasoned analysis to enable this Court to make a meaningful proportionality review.
Recently, in Ferrell v. State, 653 So.2d 367, 371 (Fla. 1995), we considered another deficient sentencing order and restated the requirements of Campbell:
We now find it necessary to further emphasize the requirements established in Campbell. The sentencing judge must expressly evaluate in his or her written sentencing order each statutory and non-statutory mitigating circumstance proposed by the defendant. This evaluation must determine if the statutory mitigating circumstance is supported by the evidence and if the nonstatutory mitigating circumstance is truly of a mitigating nature. A mitigator is supported by evidence if it is mitigating in nature and reasonably established by the greater weight of the evidence. Once established, the mitigator is weighed against any aggravating circumstances. It is within the sentencing judge's discretion to determine the relative weight given to each established mitigator; however, some weight must be given to all established mitigators. The result of this weighing process must be detailed in the written sentencing order and supported by sufficient competent evidence in the record. The absence of any of the enumerated requirements deprives this Court of the opportunity for meaningful review.
For these reasons, we direct the trial court to reevaluate the aggravating and mitigating circumstances, to resentence the defendant, and to enter a new sentencing order consistent with Campbell and Ferrell. See also Crump v. State, 654 So.2d 545 (Fla. 1995). Because of the need for resentencing, we do not reach the issue of whether the sentence of death is proportional.

CONCLUSION
Accordingly, for the reasons expressed in this opinion, we affirm Larkins' convictions but remand with instructions for a new sentencing by the court in accord with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, Justice, concurring and dissenting.
I concur in the majority's decision affirming Larkins' convictions. I dissent in the decision to reverse and remand for resentencing because the majority extends the *102 decision in Campbell v. State, 571 So.2d 415 (Fla. 1990). In Campbell, this Court required the trial court to "evaluate in its written order each mitigating circumstance proposed by the defendant." Id. at 419 (emphasis added). The following occurred in this sentencing proceeding:
THE COURT: Okay. Thank you.
Mr. Alcott, do you wish to be heard now on the existence of mitigating circumstances that were brought before the jury or before the Court at the sentencing?
MR. ALCOTT: Your Honor, only to argue to the Court that in terms of the Court making the decision as to what to impose in this case, whether to override that recommendation or whether to follow it, I would ask the Court to consider Dr. Dee's very persuasive testimony, and not rebutted by any experts on behalf of the State, that Mr. Larkins suffers from organic brain disorder, which causes him to not have full control of his emotions and his actions. And that mitigating factor is certainly not rebutted in any extra testimonial way from the State's position.
And that should  Also the Court should take into consideration that while there was evidence of a prior violent felony that it was not a first degree murder or even a second degree murder, but in fact a manslaughter which is, although the death of a human being is involved, it's not as a result of a reckless disregard for life or intentional taking of life.
And I think when you consider that weight against the testimony of Dr. Dee the Court should impose a life sentence.
THE COURT: Thank you, sir.
Based upon this contention in the sentencing proceeding, the trial judge wrote in his order:
The defense presented the testimony of Dr. Henry L. Dee, a psychologist who has offered expert testimony in numerous proceedings in this circuit and throughout this country. In essence, Dr. Dee is of the opinion that the defendant suffers from organic brain damage and because of this condition, the stresses of the circumstances inside the Circle K during the commission of the robbery somehow caused, or contributed to causing, the defendant to fire his semi-automatic weapon at the victim, resulting in her death. However, Dr. Dee does not believe that this condition is of such a nature that the defendant lacked the capacity to appreciate the criminality of his act or to conform his conduct to the requirements of law.
Viewing Dr. Dee's testimony in the light most favorable to the defendant the Court finds and determines that this mitigating circumstance is substantially outweighed by either aggravating circumstance. Since no other mitigating circumstance can be gleaned from the record, the imposition of the death penalty is the appropriate sanction for the offense of First Degree Murder.
The trial judge's order was not an expansive discussion of the sentencing proceedings, nor was it as artfully written as others which I have reviewed. Through judicial education courses hopefully the form to be used in these orders will be disseminated to all judges who try these cases so that we have better and more uniform sentencing orders. However, it is incorrect to say that this trial judge did not evaluate what the defendant proposed in the sentencing proceedings.
The effect of the majority's opinion not only grades the trial judge's order, but expands what the defendant proposes to a requirement that the trial judge go through the record and set forth in the written order and evaluation what the defendant proposes through counsel as well as what is contained in the record testimony of the defendant's witnesses. This additional requirement of the trial judge will result in still another procedural impairment of finality. What is sacrificed is a just result in this case. Further sacrificed is the legislative intent that there be a reduction in the delay resulting from court procedures between a capital murder conviction and the execution of a capital sentence.
NOTES
[1] See § 921.141(5)(b), (f), Fla. Stat. (1993).