680 So.2d 413 (1996)
James Patrick BONIFAY, Appellant,
v.
STATE of Florida, Appellee.
No. 84918.
Supreme Court of Florida.
July 11, 1996.
Rehearing Denied September 5, 1996.
*414 Michael R. Rollo, Pensacola, for Appellant.
Robert A. Butterworth, Attorney General and Curtis M. French, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
James Patrick Bonifay appeals the death sentence imposed upon him at resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
Bonifay was convicted of first-degree murder, armed robbery, and grand theft. The facts surrounding these crimes are set forth in Bonifay v. State, 626 So.2d 1310 (Fla. 1993). Following the jury's recommendation, the trial court sentenced Bonifay to death. On appeal, we affirmed the convictions but *415 vacated the death sentence because the trial court improperly found that the murder was heinous, atrocious, or cruel. We then remanded the case to the trial court to conduct a new sentencing proceeding before a jury. Id. at 1313.
After hearing evidence and argument, the resentencing jury recommended death for Bonifay by a vote of ten to two. The trial court followed that recommendation, finding that the aggravating circumstances[1] outweighed the mitigating circumstances.[2]
On appeal, Bonifay raises the following eight issues with regard to his sentence: (1) the trial court failed to make a specific finding regarding the expert testimony about the defendant's organic brain damage and whether that brain damage substantially impaired the defendant's ability to appreciate the criminality of his acts or to conform his conduct to the requirements of law; (2) the evidence does not support the death sentence; (3) the trial court erred in finding that the defendant is not capable of rehabilitation; (4) the prosecutor's repeated biblical references unduly influenced the jury; (5) the trial court erred in not declaring a mistrial when the prosecutor urged the jury to exterminate the defendant; (6) the trial court erred in allowing the State to introduce evidence of the victim's begging for his life; (7) the trial court erred in allowing the State to introduce improper victim-impact evidence; and (8) the cumulative effect of trial court's combined errors was prejudicial and fundamental error. We find no merit in any of these issues and affirm the death sentence.[3]
First, we turn to Bonifay's issue 1: whether the sentencing order in this case is deficient because the trial court erred in failing to cite Bonifay's organic brain damage. At the resentencing, Dr. James Larson, a psychologist, testified regarding Bonifay's mental condition. After administering several psychological tests and reviewing other records, Dr. Larson opined that Bonifay suffered from attention deficit disorder. Dr. Larson further stated that based on this finding, it was his impression that Bonifay suffered organic brain damage.[4] Bonifay contends that the trial court's failure to expressly note this brain damage, combined with its failure to address whether this condition affected Bonifay's capacity to appreciate *416 the criminality of his conduct, made the sentencing order deficient.
The trial court, in considering allegedly mitigating evidence, must determine whether the facts alleged in mitigation are supported by the evidence. See Rogers v. State, 511 So.2d 526, 534 (Fla.1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). After making this factual determination, the trial court must then determine whether the established facts are of a kind capable of mitigating the defendant's punishment.[5] The decision as to whether a mitigating circumstance has been established is within the trial court's discretion. See Preston v. State, 607 So.2d 404 (Fla.1992), cert. denied, 507 U.S. 999, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993); Lucas v. State, 568 So.2d 18 (Fla.1990).
To support his position, Bonifay relies on Larkins v. State, 655 So.2d 95 (Fla.1995). In Larkins, a psychologist for the defense testified that the defendant suffered both a mental and an emotional disturbance and that the defendant's organic brain damage impaired his capacity to control his conduct. Id. at 100. Additionally, the expert testified about the defendant's personal history, which the defendant claimed established other nonstatutory mitigating circumstances. However, the trial court's order made only a cursory reference to the psychologist's testimony and did not explain whether the court found any statutory mitigating circumstances based on this testimony. The order in Larkins also summarily rejected all nonstatutory mitigating circumstances. Id. at 100-01.[6] Finding that the trial court's order was inconsistent with the mitigating evidence presented, we directed the trial court to reevaluate its sentencing order consistent with the requirements of Campbell v. State, 571 So.2d 415 (Fla.1990).[7]
Contrary to the deficient sentencing order in Larkins, the trial court's order in this case expressly addressed the testimony regarding this mitigator. The trial court found:
Patrick Bonifay's mother testified he had problems in school, he was extremely overactive and disruptive, and he had a lot of behavior problems. He took Ritalin in one of his ninth grade years and was expelled once. He admitted to Dr. Gilgun he was expelled for breaking another student's jaw in a fight at Escambia High School.
Dr. James Larson, a Psychologist, evaluated Bonifay prior to the new penalty phase proceeding and administered a number of psychological tests on him. He determined Bonifay's verbal IQ was 98 which is in the average rangeand his performance IQ was 117. This 19 point difference indicated to Dr. Larson that Bonifay had some cognitive disorder, such as attention deficit disorder. He confirmed that the school identified in about *417 the fifth grade that Bonifay had an attention deficit disorder and placed him in an emotionally handicapped classroom for a number of years. This disorder means Bonifay's ability to attend and concentrate is impaired. Also, Dr. Larson found Bonifay to exhibit impulsive behavior as a part of his attention deficit disorder.
Additionally, Dr. Larson testified Bonifay had a dysthymic disorder, referring to depression. He said it is at a level which is chronic, but not present every day and it is "a very common disorder seen in the general population." Dr. Larson also said Bonifay exhibited a personality disorder, referring to a personality functioning that is unstable, exhibiting mood swings, possible irrationality, difficulty maintaining good relationships, and susceptibility to being easily guided by another. According to Dr. Larson, Bonifay has a negative self-image as a result of his disruptive home environment, which included his biological father's abuse of him and his mother. In turn, Bonifay feels rejected and is an angry person, in conflicts with peers and with authority figures.
Finally, Dr. Larson noted Bonifay has a history of suicidal ideation and perhaps two or three attempts or gestures. Yet, he acknowledged some of Bonifay's medical records reveal he denied suicide ideations.
In terms of talents, Dr. Larson said of Bonifay: "He's better than the average college freshman in terms of problem solving when he can look at things and try to put things together, good judgment in that area. He was able to read quite early on and at an advanced level actually and he reads at an excess of the 12th grade level."
Dr. Larson acknowledged that another psychologist, Dr. Gilgun, indicated the defendant had fairly good insight and judgment. Bonifay knows the difference between right and wrong, according to Dr. Larson, and he has no psychosis or major mental illness.
Clearly, proof of this mitigating circumstance does not require proof of insanity. However, the evidence must reveal some mental problems that limit the defendant's capacity to conform his conduct to the requirements of the law. In this case, Patrick Bonifay deliberately coolly and calmly and carefully composed a plan to effect Archer's scheme for revenge. He methodically carried out the plan and deliberately executed Billy Wayne Coker at the conclusion of the robbery. The evidence does not appear to support this mitigator. Nevertheless, if it is established it is entitled to little weight.
We find no error with the trial court's findings as set forth in the sentencing order regarding this mitigator. While the trial court did not specifically mention the term "organic brain damage," the court's discussion about Bonifay's attention deficit disorder refers to Bonifay's organic brain damage. The trial court expressly evaluated the evidence presented on this mitigator, thus complying with the requirements of Rogers and Campbell. The trial court's determination regarding the establishment and weight afforded to this mitigator is supported by competent, substantial evidence; consequently, the sentencing order is sufficient.
Next, we consider Bonifay's contention in issue 2 that the evidence in the record does not support the death sentence. Again, this claim is essentially an attack upon the sufficiency of the trial court's weighing of the mitigators. In support of this issue, Bonifayre lies upon our decision in Santos v. State, 591 So.2d 160 (Fla.1991). However, we find this reliance is misplaced because in this case, the trial court did adhere to the procedures required by Rogers and Campbell. Our review of the record reveals competent, substantial evidence to support the trial court's findings regarding the aggravators and mitigators. Additionally, the sentencing order sufficiently shows that the trial court carefully weighed the aggravators and mitigators.[8] Thus, we reject Bonifay's contention in respect to this issue.
While not expressly raised by Bonifay, in connection with issue 2, we have considered *418 whether the sentence of death is proportionate and hold that it is. See Mordenti v. State, 630 So.2d 1080 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 2726, 129 L.Ed.2d 849 (1994); Downs v. State, 572 So.2d 895 (Fla. 1990), cert. denied, 502 U.S. 829, 112 S.Ct. 101, 116 L.Ed.2d 72 (1991).
In issues 4 and 5, Bonifay challenges the prosecutor's closing argument to the jury. With respect to an attorney's arguments to a jury, we have previously stated:
Wide latitude is permitted in arguing to a jury. Thomas v. State, 326 So.2d 413 (Fla.1975); Spencer v. State, 133 So.2d 729 (Fla.1961), cert. denied, 369 U.S. 880, 82 S.Ct. 1155, 8 L.Ed.2d 283 (1962), cert. denied, 372 U.S. 904, 83 S.Ct. 742, 9 L.Ed.2d 730 (1963). Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. Spencer. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. Thomas; Paramore v. State, 229 So.2d 855 (Fla.1969), modified, 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 751 (1972). A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done." Darden v. State, 329 So.2d 287, 289 (Fla.1976), cert. denied, 430 U.S. 704, 97 S.Ct. 1671, 51 L.Ed.2d 751 (1977). Each case must be considered on its own merits, however, and within the circumstances surrounding the complained of remarks. Id. Compare Paramore with Wilson v. State, 294 So.2d 327 (Fla.1974).
Breedlove v. State, 413 So.2d 1, 8 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982).
We have carefully reviewed the prosecutor's closing argument and do not find that the biblical references were fundamental error[9] or even harmful error in the context of the entire argument. We also do not find, in the context of this case, the prosecutor's singular use of the word "exterminate" to be harmful error.[10]
Next, we turn to Bonifay's issue 6: whether the trial court erred in allowing the State to introduce evidence of the victim's begging for his life. Prior to opening statements, Bonifay challenged the admission of this testimony, contending that since the trial court was precluded by our prior decision in this case from considering the heinous, atrocious, or cruel aggravator, this evidence was irrelevant. The State argued that this evidence was part of the entire criminal context, and it showed heightened premeditation, which was relevant to the remaining aggravator of cold, calculated, and premeditated. The trial court overruled Bonifay's motion to exclude the evidence, finding it relevant and not unduly prejudicial.
The State presented evidence that the victim was shot twice while Bonifay and another participant in the crimes, Cliff Barth, entered the auto parts store. Barth testified that while the two were inside the store, the victim was asking Bonifay not to kill him because he had a wife and children.[11] Bonifay responded, telling the victim to "shut the fuck up" and to "fuck his kids." Bonifay then shot the victim twice more, killing him.
On appeal, Bonifay raises the same argument as raised at trial. Bonifay also contends that this evidence was superfluous to the cold, calculated, and premeditated aggravator because evidence of that aggravator was irrefutably established by the nature of this crime: a contract killing which took place over a period of days. Because the *419 jury heard this inflammatory and improper testimony, Bonifay asserts a new sentencing hearing is required. We do not agree.
Section 921.141(1), Florida Statutes (1995), sets forth the standard for admissibility in penalty proceedings. This section provides that "[i]n the proceeding, evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (5) and (6)."
A jury in a resentencing proceeding must render an advisory sentence without the benefit of hearing all of the evidence presented in the guilt phase. It is within the sound discretion of the trial court during resentencing proceedings to allow the jury to hear probative evidence that will aid it in understanding the facts of the case so that it may render an appropriate advisory sentence. See Teffeteller v. State, 495 So.2d 744 (Fla.1986). In this case, the trial court did not abuse its discretion by allowing the jury to hear this evidence. This evidence was relevant to explain to the jury the factual circumstances surrounding this murder, thus enabling it to make an informed recommendation.
Additionally, we find that this evidence was relevant to the cold, calculated, and premeditated aggravator. In this resentencing proceeding, the State had the burden to establish this aggravating circumstance beyond a reasonable doubt. Valle v. State, 581 So.2d 40 (Fla.), cert. denied, 502 U.S. 986, 112 S.Ct. 597, 116 L.Ed.2d 621 (1991). Bonifay's conduct while in the store exhibited deliberate ruthlessness, which supports the heightened premeditation requirement of this aggravator. See Wuornos v. State, 644 So.2d 1000 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1705, 131 L.Ed.2d 566 (1995); Walls v. State, 641 So.2d 381 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995). Because the State could present evidence in support of this aggravator, we find no error.
Finally, we address Bonifay's issue 7, that the trial court allowed the State to introduce improper victim-impact evidence through testimony from the victim's wife. During her testimony regarding the effects of her husband's death on her, Bonifay objected, claiming that her testimony went beyond the permissible purposes for victim-impact evidence. Bonifay then moved to strike the testimony about the impact on her and requested a curative instruction. The trial court declined to strike the testimony but gave the jury the following curative instruction: "Members of the jury, I hereby instruct you that you may consider the previous testimony of Mrs. Coker only so far as it demonstrates the victim's, Mr. Coker's, uniqueness as an individual human being and the resultant loss to the community's members by Mr. Coker's death." Bonifay did not object to the curative instruction or any other testimony from this witness. After the witness was dismissed, the trial court denied Bonifay's motion for a mistrial based on his previous objection.
In Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court held that where state law permitted its admission, the Eighth Amendment to the United States Constitution did not prevent the State from presenting evidence about the victim, evidence of the impact of the murder on the victim's family, and prosecutorial argument on these subjects.[12]Id. at 827, 111 S.Ct. at 2609. Subsequently, the legislature enacted section 921.141(7), Florida Statutes (1993). See Ch. 92-81, § 1, Laws of Fla. This section states that victim-impact evidence should "demonstrate the victim's uniqueness as an individual human being and the resultant loss to the community's members by the victim's death." This evidence should be limited to that which is relevant as specified in this section. See Windom v. State, 656 So.2d 432, 438 (Fla.), cert. denied, ___ U.S. ___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995).
We find that the trial court correctly denied the motion to strike this testimony. Clearly, the boundaries of relevance under *420 the statute include evidence concerning the impact to family members. Family members are unique to each other by reason of the relationship and the role each has in the family. A loss to the family is a loss to both the community of the family and to the larger community outside the family. Therefore, we find this testimony relevant.
Accordingly, we affirm Bonifay's sentence of death.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The trial court found three aggravating circumstances: the capital felony was committed while Bonifay was engaged in a robbery; the capital felony was committed for pecuniary gain; and the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. See § 921.141(5)(d), (f), (i), Fla. Stat. (1993).
[2] The trial court found the following statutory mitigators: Bonifay had no significant history of prior criminal activity, which the trial court gave very little weight because of Bonifay's admitted involvement in a Mississippi burglary in which someone was stabbed several months prior to the murder, and Bonifay had committed a burglary and grand theft in Escambia County; and Bonifay's age at the time of the crime, seventeen years old, which the trial court gave some weight. See § 921.141(6)(a), (g). Also, the trial court discussed the evidence in respect to the mitigator that Bonifay's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. However, the trial court found that the evidence did not support this mitigator and that even if the evidence established the mitigator, it was entitled to little weight. See § 921.141(6)(f). Moreover, the court discussed the evidence in respect to the mitigators that Bonifay committed the crime while under the influence of extreme mental or emotional disturbance and that Bonifay acted under extreme duress or under the substantial domination of another person. These mitigators were given no weight. See § 921.141(6)(b), (e).

In addition, the court found several nonstatutory mitigating circumstances including: Bonifay experienced a less-than-ideal family background, which the trial court gave some weight; Bonifay exhibited good behavior while incarcerated, which the trial court gave little weight; Bonifay had a potential for rehabilitation, which the trial court gave some weight; and Bonifay was remorseful about the death of the victim, which the trial court gave some weight. The trial court also discussed other nonstatutory mitigating circumstances including Bonifay's cooperation with law enforcement and the disparate sentences of the codefendants, but gave these no weight.
[3] We find no merit in Bonifay's issues 3 and 8, and we reject these without discussion.
[4] Dr. Larson specifically linked attention deficit disorder with organic brain damage, stating: "[M]y impression is that, yes, there is organic damage. The attention deficit disorder means that the brain isn't really functioning quite right in a fairly significant kind of way and the person is not able to attend and concentrate."
[5] These factors are ones that, "in fairness or in the totality of the defendant's life or character may be considered as extenuating or reducing the degree of moral culpability for the crime committed." Rogers, 511 So.2d at 534.
[6] The relevant portion of the sentencing order was set forth in the concurring and dissenting opinion:

The defense presented the testimony of Dr. Henry L. Dee, a psychologist who has offered expert testimony in numerous proceedings in this circuit and throughout this country. In essence, Dr. Dee is of the opinion that the defendant suffers from organic brain damage and because of this condition, the stresses of the circumstances inside the Circle K during the commission of the robbery somehow caused, or contributed to causing, the defendant to fire his semi-automatic weapon at the victim, resulting in her death. However, Dr. Dee does not believe that this condition is of such a nature that the defendant lacked the capacity to appreciate the criminality of his act or to conform his conduct to the requirements of law.
Viewing Dr. Dee's testimony in the light most favorable to the defendant the Court finds and determines that this mitigating circumstance is substantially outweighed by either aggravating circumstance. Since no other mitigating circumstance can be gleaned from the record, the imposition of the death penalty is the appropriate sanction for the offense of First Degree Murder.
Id. at 102 (Wells, J., concurring in part and dissenting in part).
[7] In Campbell we stated that the trial court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature. Campbell, 571 So.2d at 419.
[8] We specifically note that the trial court properly followed the procedures outlined by Ellis v. State, 622 So.2d 991 (Fla.1993), and found and weighed Bonifay's young age at the time of the murder, seventeen years old, as a mitigating factor.
[9] Bonifay did not object to any of the biblical references during the closing argument; therefore, this claim is procedurally barred in the absence of fundamental error. See Pangburn v. State, 661 So.2d 1182, 1187 (Fla.1995).
[10] We do, however, caution against the use or approval of arguments which use references to divine law because argument which invokes religion can easily cross the boundary of proper argument and become prejudicial argument. Further, we do find that the use of the word "exterminate" or any similar term which tends to dehumanize a capital defendant to be improper. We condemn such argument and caution prosecutors against arguments using such terms.
[11] Additionally, a witness testified that after the killing, Bonifay stated that the victim was saying, "please don't kill me, I have a wife and kids."
[12] The Court stated that victim-impact evidence is designed to show, "each victim's `uniqueness as an individual human being,' whatever the jury might think the loss to the community resulting from his death might be." Payne, 501 U.S. at 823, 111 S.Ct. at 2607.