POLSTON, J.,
concurring in part and dissenting in part.
I disagree with the majority’s striking of the pecuniary gain aggravating circumstance, but I agree with the majority’s analysis of the other aggravators, including upholding the avoid arrest aggravating circumstance. I also disagree with the majority that the trial court erred in rejecting the statutory mitigation that the defendant’s capacity to appreciate the criminality of his conduct or to conform to the requirements of law was substantially impaired. I agree with the majority that the conviction should be affirmed. See majority op. at 190-91 and n. 1. But because I believe the trial court properly found the avoid arrest and pecuniary gain aggravating circumstances, properly rejected the statutory mitigators, and because the jury recommended the death sentence by a significant eleven to one margin, I would not vacate Williams’ death sentence and enter a sentence of life. Instead, I would remand for a new penalty phase. Accordingly, I respectfully concur in part and dissent in part.

A. The Pecuniary Gain Aggravator

On appeal, it is not this Court’s function to reweigh the evidence; that is the role of the trial court. See Willacy v. State, 696 So.2d 693, 695 (Fla.1997). Instead, this Court looks to see whether the trial court applied the correct rule of law for each aggravating circumstance and whether its finding of an aggravator is supported by competent substantial evidence. See id. Here, the trial court applied the correct rule of law in finding the pecuniary gain aggravator, and there is competent substantial evidence in the record to support it.
As the majority notes, in order to establish the pecuniary gain aggravator in a death penalty case, “the State must prove beyond a reasonable doubt that the murder was motivated, at least in part, by a desire to obtain money, property, or other financial gain.” Majority op. at 201 (emphasis supplied) (citing Deparvine v. State, 995 So.2d 351, 382 (Fla.2008) (quoting Finney v. State, 660 So.2d 674, 680 (Fla.1995))). “The pecuniary gain factor is permitted where the murder ‘is an integral step in obtaining some sought-after specific gain.’ ” Majority op. at 201 (quoting Brooks v. State, 918 So.2d 181, 206 (Fla.2005) (quoting Hardwick v. State, 521 So.2d 1071, 1076 (Fla.1988))). This Court has upheld the pecuniary gain aggravating circumstance where a defendant kills the victim and then retains the victim’s car or other possessions. See, e.g., Deparvine, 995 So.2d at 382 (holding pecuniary gain aggravating circumstance was “supported by competent, substantial evidence because the victims’ truck was discovered in Deparvine’s possession after the murders”); Rogers v. State, 783 So.2d 980, 993-94 (Fla.2001) (“Rogers never abandoned Cribbs’ vehicle. Rather, the evidence showed that he was living in Cribbs’ vehicle a week after the homicide.... Therefore, we affirm the trial court’s ruling finding the pecuniary gain aggravating circumstance applicable.”); Jones v. State, 690 So.2d 568, 570 (Fla.1996) (holding pecuniary gain aggravator applicable when the defendant retained possession of a vehicle, even though defendant had already *209 taken possession of the car before the murder); Lambrix v. State, 494 So.2d 1143, 1148 (Fla.1986) (finding pecuniary gain applicable “because, following, .the murder, Lambrix stole [the victim’s] automobile”).
“The pecuniary gain aggravator is also applicable where the defendant’s motivation for murder was to ‘improv[e his] financial worth.’ ” Rogers, 783 So.2d at 993 (quoting Allen v. State, 662 So.2d 323, 330 (Fla.1995)). Of particular relevance is the financial circumstance of the defendant at the time of the crime. See, e.g., Orme v. State, 25 So.3d 536 (Fla.2009) (upholding pecuniary gain aggravator where the record showed that Orme did not have any money left when the victim flushed his cocaine in the toilet; Orme proceeded to murder the victim by brutally beating her; and Orme took the victim’s personal property and used the victim’s car to party with another woman for the rest of the night), petition for cert. filed, No. 09-10042 (U.S. Apr. 1, 2010); Huggins v. State, 889 So.2d 743, 770 (Fla.2004) (pecuniary gain aggravating circumstance applicable where defendant did not own a car and continued to use victim’s Ford Explorer after the murder). In sum, where the defendant seeks to gain financially from the death of the victim, even through simply retaining the victim’s personal possessions, the pecuniary gain aggravating circumstance applies.
Here, as the trial court properly documented, Williams was destitute. He had no job or other known means of income or resources; he had no place of his own to live and no working automobile. On at least two separate occasions Williams drained the victim’s bank account by making unauthorized withdrawals from an automatic teller machine. Notably, Williams made four such unauthorized withdrawals in the early morning hours of October 3, 2006, less than twenty-four hours before he murdered Ms. Dykes. By Williams’ own admission, Ms. Dykes had already confronted him about using her debit cards. Williams had been banished from his wife’s home and had been living with Ms. Dykes for several months. Clearly, Williams had motive to avoid a similar result at Ms. Dykes’ home, and after the murder, Williams continued to live there and to use her personal things. In addition, the evidence revealed that Williams had two automobiles, neither of which was operational at the time of the murder. Consequently, Williams began using Ms. Dykes’ car and continued to do so after he killed her. In sum, Williams retained pecuniary benefits by killing Ms. Dykes; he retained whatever money he had left after draining her accounts. He also benefited from the use of her automobile, her home, and her personal effects. Accordingly, the evidence shows that this murder was motivated at least in part by Williams’ desire to obtain money, property, or other financial gain. Therefore, competent substantial evidence supports the trial court’s application of the pecuniary gain aggravating circumstance.
The majority, however, rejects this evidence as circumstantial, concluding instead that Williams simply continued to use Ms. Dykes’ home, automobile, and personal property and that Williams’ depleting her bank accounts was not a motive for the murder. The fact that Williams simply continued to use Ms. Dykes’ property is not a reasonable hypothesis that may negate this aggravating factor. Rather, the fact that Williams continued to use Ms. Dykes’ property supports that the murder was committed at least in part for pecuniary gain. The pecuniary gain motive is most evident in that Williams had been living off Ms. Dykes for months and wanted to continue to do so. The fact that Ms. Dykes was threatening to turn him in to *210 authorities supports that Ms. Dykes’ financial support of Williams was about to end. Furthermore, although the majority claims that none of the inmates’ testimony indicated a pecuniary gain motive for the murder,[14] that is clearly not the case. In particular, William Hawley testified that Ms. Dykes was threatening to turn Williams in to authorities and have him prosecuted because he had been using her ATM cards. Billie Shirah testified that Williams said he killed Ms. Dykes with a ball bat for drugs. And Joseph Cordell testified that the argument that led to the murder began when Ms. Dykes withheld drugs from Williams and confronted him about stealing her money. This trial testimony clearly indicates that Williams did not want to be cut off from Ms. Dykes’ money and/or her drugs. The majority’s hypothesis is also inconsistent with our case law that holds that the pecuniary gain aggravating circumstance applies when the defendant continues to use the victim’s property, even when he had access to it prior to the murder. See Jones, 690 So.2d at 570 (Fla.1996). Williams did not abandon Ms. Dykes’ property or use her car to run away. Rather, he planned to benefit from his continued use of her property.

B. The Statutory Mitigation

I also do not agree with the majority that the trial court erred in rejecting the statutory mitigating circumstance that the defendant’s capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. See generally Bonifay v. State, 680 So.2d 413, 416 (Fla.1996) (“The trial court, in considering allegedly mitigating evidence, must determine whether the facts alleged in mitigation are supported by the evidence.”) (citing Rogers v. State, 511 So.2d 526, 534 (Fla.1987)). “The decision as to whether a mitigating circumstance has been established is within the trial court’s discretion.” Bonifay, 680 So.2d at 416 (citing Preston v. State, 607 So.2d 404 (Fla.1992)).
Obviously, Williams appreciated the criminality of his conduct given the extreme measures he undertook to conceal his actions. See Salvatore v. State, 366 So.2d 745, 748, 752 (Fla.1978) (finding no error in the trial court’s rejecting mitigation — defendant failed to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law— based upon the fact that the defendant went to great lengths to conceal the crime). Here, Williams stole a boat; tied the boat to the victim’s car; attached and positioned concrete blocks on the victim’s body; drove to Lake Cassidy; placed the weighted body in the boat; maneuvered the boat out into the lake and dumped the body overboard; and drove back to the victim’s home where he unloaded the boat out of plain sight, behind the residence.
Further, the evidence does not support that Williams’ ability to conform his conduct to the requirements of law was substantially impaired. Williams has a history of voluntary drug use. Yet, Dr. Larson testified that Williams had no history of. mental illness and that he had never received psychiatric treatment. He also testified that Williams had no psychotic symptoms, delusions, or hallucinations. On the contrary, Dr. Larson testified that Williams’ cognition is intact; he has an average IQ; and he has no well-defined personality disorder. Any minor issues, such as some antisocial personality features, stemmed entirely from Williams’ voluntary drug use. In addition, Dr. Larson testified that he thought Williams *211 could appreciate the criminality of his conduct. However, Dr. Larson also testified that because Williams was on a cocaine binge at the time, his ability to conform his conduct to the requirements of the law was substantially impaired. The trial court rejected Dr. Larson’s opinion that Williams’ ability to conform his conduct to the requirements of the law was substantially impaired, concluding that the facts of this case show otherwise.
Evidence of a history of drug abuse and testimony that Williams was on drugs at the time of the crime, without more, does not support finding this mitigator. See Duest v. State, 855 So.2d 33, 42 (Fla.2003) (“Nor did the trial court abuse its discretion in denying the instruction on the impaired capacity mitigator, despite evidence that Duest had a history of drug abuse, including addiction to heroin, and testimony that he used drugs and alcohol near the time of the crime. Evidence of consumption of intoxicating substances, without more, does not require an instruction on this mitigator.” (citing Cooper v. State, 492 So.2d 1059, 1062 (Fla.1986))); cf. Rogers, 783 So.2d at 995 (giving “some weight” to this statutory mitigator was appropriate where Rogers suffered from brain damage, mental illness, schizophrenia, mania, paranoia, head trauma, and porphyria, a condition precipitated by alcohol abuse that causes confusion, frustration, and distress). Although there was evidence that Williams was smoking crack cocaine, as in Duest, there was “no evidence indicating that he was substantially impaired at the time of the murder or that his ability to control his behavior was reduced” by his use of drugs. Duest, 855 So.2d at 42. In fact, Williams’ actions in draining Ms. Dykes’ accounts, making purchases at retail stores, operating a motor vehicle and a boat without incident, and going to the extensive lengths that Williams did to cover up his crime indicate that Williams was able to conform his conduct.
Accordingly, the evidence does not support that the defendant’s capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired, and the trial court did not err in rejecting this statutory mitigating circumstance.

C. Remand for a New Sentencing Phase

This Court has affirmed the imposition of the death penalty where the aggravating and mitigating circumstances are similar to those in this case. See, e.g., Shellito v. State, 701 So.2d 837 (Fla.1997) (upholding death sentence with prior violent felony and pecuniary gain/commission during a robbery aggravators and nonstatutory mitigation of age, background, and character); Mendoza v. State, 700 So.2d 670 (Fla.1997) (upholding death sentence for murder by a single gunshot wound with aggravating factors of prior violent felony conviction and pecuniary gain merged with commission during the course of a felony and mitigating factors including defendant’s alleged history of drug use and mental health problems); Sliney v. State, 699 So.2d 662 (Fla.1997) (death sentence proportionate with aggravating circumstances of avoid arrest and commission during a robbery, two statutory mitigators, and several nonstatutory mitigators); Burns v. State, 699 So.2d 646 (Fla.1997) (affirming death sentence where three aggravating factors were merged into one aggravator because they were all based on the fact that the victim was a law enforcement officer (victim engaged in the performance of his official duties, murder committed to avoid arrest, and murder committed to disrupt the lawful exercise of enforcement of the laws), two statutory mitigators, and several nonstatutory miti *212 gating factors); Consalvo v. State, 697 So.2d 805 (Fla.1996) (holding death penalty-proportionate with aggravating factors of avoid arrest and commission during course of a burglary and some nonstatutory mitigation); Ferrell v. State, 680 So.2d 890 (Fla.1996) (affirming death sentence where defendant had but one aggravator of prior violent felony and several nonstatutory mitigating circumstances); Pope v. State, 679 So.2d 710 (Fla.1996) (affirming a death sentence where the trial court found two aggravating factors (prior violent felony and pecuniary gain), two statutory mitigating factors (extreme emotional disturbance and impaired capacity to appreciate criminality or conform conduct), and three non-statutory mitigating factors (including drug use at the time of the offense)); Heath v. State, 648 So.2d 660 (Fla.1994) (affirming defendant’s death sentence where the trial court found two aggravating factors — prior violent felony and murder committed during course of robbery— and the statutory mitigating circumstance of extreme mental or emotional disturbance based upon substance abuse, good character in prison, and that codefendant received a life sentence); Melton v. State, 638 So.2d 927 (Fla.1994) (finding death sentence proportionate for fatal shooting of victim during armed robbery of pawn shop; aggravating factors included prior violent felony and pecuniary gain, and mitigating factors included the defendant’s good conduct in jail and difficult family background).
Here, however, the trial court did not include in its order how much weight it assigned to each aggravating circumstance. Because this Court cannot determine how much weight the trial court assigned to the aggravators, and given this Court’s precedent of affirming the death penalty in similar circumstances and the significant eleven to one jury recommendation of death in this case,[15] I cannot conclude, as the majority has done, that the death penalty would not be imposed here. Therefore, I would remand for a new penalty phase. See Kearse v. State, 662 So.2d 677 (Fla.1995) (remanding for new sentencing phase before a jury when avoid arrest and murder of a law enforcement officer aggravators were improperly doubled, CCP instruction was unconstitutionally vague, HAC was improperly applied, and the jury recommendation of death was eleven to one); Trotter v. State, 576 So.2d 691 (Fla.1990) (remanding to trial court for resentencing with a jury following trial court’s erroneous finding of an aggravating circumstance).
Accordingly, I respectfully concur in part and dissent in part.
CANADY, J., concurs.

. Majority op. at 201-02.

. There is no way of knowing which factors the jury relied upon in making its recommendation. See Sochor v. Florida, 504 U.S. 527, 538, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992) ("Because the jury in Florida does not reveal the aggravating factors on which it relies, we cannot know whether this jury actually relied on [CCP and HAC in reaching its recommendation] ... [A jury] is indeed likely to disregard an option simply unsupported by the evidence.") (emphasis supplied).