PER CURIAM.
 

 Fred Anderson, Jr., appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habe-as corpus.
 
 [1]
 
 For the reasons explained below, we affirm the circuit court’s order denying Anderson’s motion for postconviction relief, and we deny Anderson’s petition for writ of habeas corpus.
 

 OVERVIEW
 

 Anderson was convicted and sentenced to death for the 1999 murder of Heather Young. During a bank robbery, Anderson shot Young several times and inflicted multiple fatal wounds. Anderson shot a second victim, Marisha Scott, leaving her paralyzed. Anderson was also convicted of grand theft of a firearm, robbery with a firearm, and the attempted first-degree murder of Marisha Scott. We affirmed Anderson’s conviction and sentence on direct appeal, and we set forth detailed facts in that opinion.
 
 See Anderson v. State,
 
 863 So.2d 169 (Fla.2003).
 

 Following an evidentiary hearing, the circuit court denied Anderson’s motion for postconviction relief. Anderson now challenges the circuit court’s postconviction order and raises various claims. He also seeks habeas relief. We begin our opinion by examining the relevant facts of this case. We then turn to the claims raised in Anderson’s 3.851 motion. Finally, we address Anderson’s habeas claims.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 On March 15, 1999, Anderson appeared in court for a violation of community control. Anderson, who was on community
 
 *507
 
 control for committing grand theft, was ordered to pay more than $4000 in restitution, but had paid less than $100 at the time that he returned to court. On March 15, the court ordered Anderson to serve one year at a restitution center beginning on March 19,1999.
 

 On March 18, Anderson visited a friend at the United Southern Bank (USB) in Mount Dora. Also on that day, he stole a single-action revolver from a neighbor’s storage building. The hammer on this revolver had to be pulled back and cocked each time before firing.
 

 On the morning of March 19, Anderson returned to the same bank, where he pretended to be a student writing a paper on banking and finance. While there, he spoke with the bank manager and observed the security VCR located in the manager’s office. Anderson intended to rob this bank and deposit the money at a second bank in order to pay his outstanding restitution. After visiting the second bank, Anderson called his community control officer to inform her that he had the full amount of restitution.
 

 On March 20, Anderson took a second revolver from his mother’s house and headed to the USB with doughnuts and juice, ostensibly to thank the employees for their help the day before. Victims Young and Scott were the only employees working at the time. After leaving the bank briefly, he returned with both revolvers, forced Young and Scott into the bank vault, and ordered them to fill a trash bag with money. Then, after asking the women who wanted to die first, Anderson began firing both revolvers, killing Heather Young and paralyzing Marisha Scott. Anderson fired a total of ten shots, nine of which hit the victims.
 

 The first police officer to arrive on the scene saw Anderson ripping the security equipment from the wall and holding a trash can containing one of the revolvers and more than $70,000 in cash. Another officer at the scene heard Anderson say that he “did it.”
 

 Forensic evidence showed that Anderson’s hands tested positive for gunshot residue, and his clothes were stained with blood that matched Scott’s DNA. Moreover, each of seven bullets retrieved from the scene or from Young’s body was linked to or conclusively matched with one of the revolvers. Pathology testimony revealed that decedent Young received seven gunshot wounds, all but one of which could have been fatal by itself. Both Young and Scott suffered blunt force trauma to their heads in addition to gunshot wounds.
 

 Anderson testified on his own behalf at trial. Acknowledging that he had financial problems, Anderson admitted to taking both revolvers, robbing the bank, and shooting Young and Scott.
 

 The jury convicted Anderson of the first-degree murder of Heather Young, the attempted first-degree murder of Marisha Scott, grand theft of a firearm, and robbery with a firearm. At the conclusion of the penalty phase, the jury unanimously recommended the death penalty. The trial court sentenced Anderson to death after finding four aggravating factors and ten nonstatutory mitigating factors. The four aggravating factors were: (1) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP); (2) the defendant was previously convicted of another capital felony or of a felony involving the use of threat or violence to the person (prior violent felony)
 
 [2]
 
 ; (3) the
 
 *508
 
 murder was committed by a person previously convicted of a felony and under sentence of imprisonment or placed on community control or on felony probation; and (4) the murder was committed for pecuniary gain.
 
 See Anderson v. State,
 
 863 So.2d 169, 175 n. 5 (Fla.2003). This Court affirmed Anderson’s conviction and sentence on direct appeal.
 
 See id.
 
 at 189.
 

 Seeking postconviction relief pursuant to rule 3.851, Florida Rules of Criminal Procedure, Anderson filed a motion to vacate judgment of conviction and sentence that raised numerous claims. The circuit court held a
 
 Huff
 

 [3]
 

 hearing to determine whether the claims Anderson raised in his motion required an evidentiary hearing. Following the
 
 Huff
 
 hearing, the court granted an evidentiary hearing where the court considered each of Anderson’s claims. Both Anderson and the State presented witnesses at the evidentiary hearing, after which the court entered an order denying relief. Anderson now appeals the circuit court’s denial of postconviction relief; he also raises additional claims in his petition for writ of habeas corpus. We will address Anderson’s appeal first, then Anderson’s habeas petition.
 

 ANDERSON’S 3.851 CLAIMS
 

 The Issues on Appeal
 

 Anderson raises multiple issues in his appeal of the circuit court’s denial of post-conviction relief. Anderson contends that (1) trial counsel was ineffective for failing to uncover evidence that Anderson was sexually abused as a child; (2) trial counsel was ineffective for failing to ensure an adequate and thorough mental health evaluation that would have uncovered additional mitigating evidence; (3) trial counsel was ineffective for failing to seek the jury instruction regarding merging aggravating factors; (4) trial counsel was ineffective for failing to object to or seek to limit the admission of the victims’ photographs or both; (5) trial counsel was ineffective for failing to object to witness testimony regarding the victims’ condition; (6) trial counsel was ineffective for failing to properly object to the admission of blood spatter evidence; (7) trial counsel was ineffective for failing to object to prosecutorial statements regarding the balancing of aggravating and mitigating factors; (8) trial counsel was ineffective for failing to properly object to and preserve certain comments by the prosecutor during closing argument; (9) Anderson was denied due process when he was shackled at trial; (10) the trial coui't erred in denying Anderson’s motion to interview jurors; (11) Anderson was deprived of a competent mental health evaluation; and (12) the combination of procedural and substantive errors deprived Anderson of a fundamentally fair trial.
 

 Ineffective Assistance of Counsel
 

 Anderson asserts various claims of ineffective assistance of counsel and argues that the circuit court should have granted postconviction relief. Following the United States Supreme Court’s decision in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
 

 First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court
 
 *509
 
 considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
 

 Maxwell v. Wainwright,
 
 490 So.2d 927, 932 (Fla.1986) (citations omitted).
 

 Because both prongs of the
 
 Strickland
 
 test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence, but reviewing the circuit court’s legal conclusions de novo.
 
 See Sochor v. State,
 
 883 So.2d 766, 771-72 (Fla.2004).
 

 There is a strong presumption that trial counsel’s performance was not ineffective.
 
 See Strickland,
 
 466 U.S. at 690, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.”
 
 Id.
 
 at 689, 104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’”
 
 Id.
 
 (quoting
 
 Michel v. Louisiana,
 
 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Moreover, trial counsel’s “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.”
 
 Occhicone v. State,
 
 768 So.2d 1037, 1048 (Fla.2000).
 

 Sexual Abuse Mitigation
 

 Anderson argues that trial counsel was ineffective for failing to uncover and present mitigating evidence that Anderson was sexually abused as a child. We note that the State’s postconviction expert found the abuse allegations credible, and we also assume their credibility for the purpose of this analysis. Nonetheless, we conclude that trial counsel’s performance was not deficient, in large part because Anderson himself was a barrier to the discovery of this evidence. We also conclude that the absence of this mitigation did not satisfy Strickland’s requirement of prejudice.
 

 “[A]n attorney has a strict duty to conduct a reasonable investigation of a defendant’s background for possible mitigating evidence.”
 
 State v. Riechmann,
 
 777 So.2d 342, 350 (Fla.2000). However, “when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel’s failure to pursue those investigations may not later be challenged as unreasonable.”
 
 Strickland,
 
 466 U.S. at 691, 104 S.Ct. 2052.
 

 At the evidentiary hearing, Anderson presented the testimony of his cousin, Raymond Green, who spent time with Anderson while they were growing up. Raymond testified that another cousin, Michael Green, sexually abused both of them, and he recounted a particularly violent episode when Anderson was about six years old. Anderson did not provide his trial counsel or his trial mental health expert any information about the abuse. Both trial counsel testified that had they known about the abuse, they would have presented the evidence during the penalty phase. Although Anderson chose not to reveal this information to his attorneys or to any experts until the postconviction stage, he asserts that had counsel been more thorough, counsel would have uncovered this information while preparing for trial.
 

 
 *510
 
 Before trial, to aid the defense in developing mitigation, Anderson was given a forensic assessment form to fill out. The form contained a wide variety of questions designed to elicit information about the defendant’s background, including, among other areas, his family history, history of drug use, physical and mental health history, educational history, and history of any physical, mental, or sexual abuse. Anderson’s lead trial counsel testified that he had never had a client be more thorough in completing the form than Anderson. Anderson’s answers, though, denied sexual abuse. For example, in a section where Anderson was given a list of criteria and asked to underline each one that was a problem during his childhood, he did
 
 not
 
 underline “a traumatic event,” “witness to violence,” or most importantly, “sexually molested.” In a section on family history, Anderson described his childhood as “normal,” and where Anderson was asked “[d]oes client think he/she was abused or neglected as a child,” Anderson answered, “no.” In light of pointed answers like these and Anderson’s failure to discuss the abuse with trial counsel or his trial mental health expert, counsel was not deficient for failing to uncover the sexual abuse.
 

 The failure to present sexual abuse mitigation was also raised in
 
 Morton v. State,
 
 995 So.2d 233, 240 (Fla.2008). There, Morton argued that trial counsel was deficient for not presenting evidence that, as a child, he was sexually abused by his stepfather.
 
 Id.
 
 at 239. Counsel was aware that Morton was physically abused and that his stepfather sexually abused Morton’s sister, but there was no evidence that Morton was sexually abused.
 
 Id.
 
 In fact, Morton specifically denied being sexually abused. In determining that Morton’s ineffective assistance of counsel claim had no merit, this Court said, “Thus, we conclude that counsel in the instant case was not deficient in failing to present evidence of this abuse, particularly when the victim of the alleged abuse denied that he was ever assaulted.”
 
 Id.
 
 at 240;
 
 see also Davis v. State,
 
 928 So.2d 1089, 1110 (Fla.2006) (“We cannot conclude that trial counsel was deficient for failing to pursue such mitigation when Davis himself failed to inform either counsel or mental health experts about this matter.”).
 

 Because Anderson did not inform his trial counsel or his trial mental health expert about the sexual abuse and, when given the opportunity, he denied any abuse, he has not shown that trial counsel’s performance was deficient. Therefore, he is not entitled to relief on this claim.
 

 However, even if we were to conclude that counsel’s performance was deficient, Anderson is still not entitled to relief as he has not satisfied
 
 Strickland’s
 
 required showing of prejudice. In sentencing Anderson to death, the trial court found four aggravating factors, including CCP and prior violent felony. We have said that CCP and prior violent felony “are among the weightiest of aggravators.”
 
 Deparvine v. State,
 
 995 So.2d 351, 381 (Fla.2008). Also, the trial court found as aggravating factors that Anderson committed the murder for pecuniary gain and that he had a prior felony conviction and committed the murder while on community control for that conviction.
 

 Moreover, Anderson murdered Young during the course of a bank robbery that he orchestrated to avoid being sent to a restitution center for failing to pay his outstanding restitution for grand theft. The record reflects a comprehensive plan, replete with instances of deception. Anderson visited the bank in the days leading up to the robbery, deceiving the manager and employees as to his true
 
 *511
 
 intent. Anderson obtained two loaded revolvers and took them with him to the bank on the morning of the offense. At that time, Anderson was still in “disguise” as a student seeking to show his appreciation to the bank employees for their help. Until the moment when Anderson walked back into the bank with the revolvers, he feigned a legitimate presence there. Out of ten shots fired, six of them were fired from the single-action revolver which required that the hammer be cocked each time before it was fired. Nine of the shots hit the victims, who also suffered blunt trauma in the incident. Anderson was caught while trying to steal the bank’s surveillance equipment.
 

 Even if trial counsel were deficient in failing to present evidence of Anderson’s childhood sexual abuse in mitigation, our confidence in Anderson’s death sentence would not be undermined. Therefore, we conclude that the trial court properly denied postconviction relief on this claim.
 

 Investigation and Presentation of Mitigation
 

 Anderson contends that counsel was ineffective for failing to ensure that he receive an adequate mental health evaluation and for failing to uncover and present certain mitigating evidence during the penalty phase. Specifically, he claims that trial counsel did not ensure that the expert was given enough time and resources to conduct a thorough mental health evaluation and that additional mitigating evidence should have been uncovered and presented. Had the development of mitigation been more thorough, Anderson argues, significant evidence would have been uncovered and presented at the penalty phase, including the existence of post-traumatic stress disorder (PTSD), borderline personality disorder, psychosis, and brain damage.
 

 Counsel may be deemed ineffective at the penalty phase where the investigation of mitigating evidence is “woefully inadequate” and credible mitigating evidence existed which could have been found and presented at sentencing.
 
 See Hildwin v. Dugger,
 
 654 So.2d 107, 109 (Fla.1995). However, we conclude that Anderson is not entitled to relief on this claim.
 

 Approximately three weeks before trial, the trial court appointed Dr. Elizabeth McMahon, a forensic psychologist with more than thirty years of experience as a psychologist and with experience in more than 100 penalty phase proceedings, to evaluate Anderson. During four separate visits with Anderson, McMahon conducted a full neuropsychological screening, a full psychological battery of tests, and a full interview with Anderson. McMahon used the MMPI-2
 
 [4]
 
 to assess Anderson for mental illness, she reviewed a variety of documents provided by trial counsel, and she consulted with counsel concerning her findings. McMahon concluded that Anderson had heightened anxiety but that he did not suffer from any disease or defect of the mind, nor did he present any indicators of statutory or nonstatutory mitigation. Anderson did not tell McMahon about any allegations of childhood abuse. After fully evaluating Anderson, McMahon eliminated diagnoses of PTSD, psychosis, borderline personality disorder, and brain damage. McMahon testified that she had sufficient time to fully evaluate Anderson.
 

 The circuit court, as did trial counsel, found McMahon’s evaluation of Anderson adequate. McMahon’s evaluation did not reveal the mental health mitigation that Anderson now says exists; in fact, the evaluation eliminated it. The fact that
 
 *512
 
 Anderson has subsequently found experts whose opinions conflict with McMahon’s opinion does not render the earlier evaluation inadequate.
 
 See Sexton v. State,
 
 997 So.2d 1073, 1085 (Fla.2008) (stating that finding a postconviction mental health expert who disagrees with “the extent or type of testing performed, or the type of mitigation presented” does not automatically render trial counsel ineffective). Counsel reasonably relied on McMahon’s expertise not only as a forensic psychologist, but as one with a great deal of experience with death penalty cases. Trial counsel was not required to continue searching for an expert who would give a more favorable assessment of Anderson’s mental status. We agree with the circuit court’s assessment that McMahon’s conclusions are not negated or deemed unreliable simply because other experts now disagree with them.
 

 Moreover, trial counsel and the investigator consulted a number of potential penalty phase witnesses in an effort to develop mitigation. Anderson’s lead trial counsel testified that based on that investigation, he made a strategic decision not to use some of the witnesses at the penalty phase because they would have been more harmful than helpful to Anderson.
 

 As with Anderson’s sexual abuse claim, we will now explore whether Anderson himself acted in such a way as to adversely affect trial counsel’s performance. The forensic assessment form that Anderson completed contained a number of questions relating to possible mental health issues and other mitigation. The circuit court noted that Anderson provided different accounts of his background and his mental health symptoms. The court pointed out that while Anderson claimed certain symptoms, he denied others, ultimately impacting the direction of trial counsel’s development of mitigation. Anderson’s answers denied any history of individual or family mental health problems. He also denied any treatment for neurological problems or head injuries and said that he had never been unconscious.
 

 Moreover, Anderson denied problems with alcohol, and his answers regarding drug use suggested a person who only occasionally used marijuana. He also denied any family history of such problems. Counsel testified that' it was a strategic decision not to present evidence of Anderson’s prior drug use because it would be inconsistent with the penalty phase strategy of trying to humanize him and paint him as a good person.
 

 Anderson’s answers relating to education describe a man with an advanced education and active involvement in extracurricular activities in grade school and college. Common avenues of mitigation were limited, if not eliminated, as a result of Anderson’s answers, which made certain lines of investigation and argument appear fruitless. Given the information that counsel had available, we agree with the circuit court’s decision that counsel’s performance was not deficient.
 

 However, even if counsel’s performance was deficient, Anderson has not demonstrated that he was prejudiced. “In assessing prejudice, we reweigh the evidence in aggravation against the totality of the mental health mitigation presented during the postconviction evidentiary hearing to determine if our confidence in the outcome of the penalty phase trial is undermined.”
 
 Hannon v. State,
 
 941 So.2d 1109, 1134 (Fla.2006);
 
 see also Asay v. State,
 
 769 So.2d 974, 985 (Fla.2000) (“When evaluating claims that counsel was ineffective for failing to present mitigating evidence, this Court has phrased the defendant’s burden as showing that counsel’s ineffectiveness ‘deprived the defendant of a reliable penalty phase proceeding.’ ”);
 
 *513
 

 Strickland,
 
 466 U.S. at 687, 694, 104 S.Ct. 2052.
 

 Even if the mental health experts had testified at the penalty phase, the jury would have been presented with inconsistent testimony. Four mental health experts testified at the evidentiary hearing. Anderson hired two postconviction experts, Dr. Jorge Villalba and Dr. Robert Berland, and his trial mental health expert, Dr. McMahon, also testified. The State called Dr. Harry McClaren, who evaluated Anderson during the course of postconviction proceedings. Each expert reached his or her own conclusion about Anderson’s mental health and those conclusions varied.
 

 We conclude that even if this evidence had been presented in mitigation, the significant aggravation would have outweighed it. We again point to the trial court’s finding of four aggravating factors, including CCP and prior violent felony. Considering the overwhelming aggravation and the inconclusive opinions regarding Anderson’s mental health, our confidence in the outcome is not undermined. Thus, Anderson is not entitled to relief.
 

 Jury Instruction on Merging Aggravating Factors
 

 Anderson argues that counsel was ineffective for failing to request the aggravating factor merging instruction, and he maintains that the trial court improperly doubled the CCP and pecuniary gain aggravating factors by using the same facts to find both CCP and pecuniary gain. The merging instruction, contained in Florida Standard Jury Instruction 7.11, states as follows:
 

 The State may not rely upon a single aspect of the offense to establish more than one aggravating circumstance. Therefore, if you find that two or more of the aggravating circumstances are proven beyond a reasonable doubt by a single aspect of the offense, you are to consider that as supporting only one aggravating circumstance.
 

 Where the jury is instructed as to duplica-tive aggravating factors, the jury should receive the aforementioned limiting instruction.
 
 See Castro v. State,
 
 597 So.2d 259 (Fla.1992) (concluding that the jury should have received the merging instruction where it was permitted to consider as aggravating circumstances that the murder was committed for pecuniary gain and that the murder was committed during the commission of a robbery). On the facts of this case, however, we conclude that CCP and pecuniary gain were not duplicative aggravating factors. Therefore, Anderson’s trial counsel was not deficient in failing to request the merging instruction. As a result, counsel’s failure to seek the merging instruction did not constitute deficient performance. Because counsel’s performance was not deficient, we need not address whether Anderson suffered prejudice.
 
 See Strickland,
 
 466 U.S. at 697, 104 S.Ct. 2052.
 

 We also conclude that the trial court did not improperly double the CCP and pecuniary gain aggravating factors by using the same facts to find both CCP and pecuniary gain. The trial court made extensive findings as to the existence of CCP. These findings illustrated premeditation of murder and highlighted the manner in which Anderson carried out his crimes and sought to eliminate the witnesses. Anderson obtained two revolvers in advance of the robbery. On the day of the robbery, Anderson took the loaded revolvers into the bank. He forced Young and Scott, the only people remaining in the bank, into the vault to fill a trash liner with money. After doing as they were told, Anderson asked the women who wanted to die first. He shot Young and Scott multiple times using both revolvers
 
 *514
 
 and at point blank range. One of the revolvers required that Anderson cock the hammer first and then pull the trigger in order to fire — Anderson fired this particular weapon six times. Bullets from both revolvers were found in Young’s body. Anderson was caught trying to remove the other evidence of his presence in the bank that day — the VCR which he studied the day before. The trial court’s finding of the pecuniary gain aggravating factor was based on evidence that Anderson’s motive for the murder was to obtain money to pay his outstanding restitution. Each aggravating factor is based on a separate set of facts.
 

 We have rejected previous claims that the trial court improperly doubled the CCP and pecuniary gain aggravating factors.
 
 See Larzelere v. State,
 
 676 So.2d 394, 406 (Fla.1996) (concluding that CCP and pecuniary gain were not improperly doubled where the trial court’s finding of “CCP was based on evidence that she [appellant] meticulously staged her husband’s murder to look as though it were committed during a robbery,” and the court’s finding of pecuniary gain was based on “evidence that appellant killed her husband to collect life insurance”);
 
 Fotopoulos v. State,
 
 608 So.2d 784, 793 (Fla.1992) (concluding that CCP and pecuniary gain were not improperly doubled where the trial court’s finding of CCP was based on evidence that the murder was “carefully choreographed,” and the court’s finding of pecuniary gain was based on evidence that the appellant killed the victim “in furtherance of his plan to receive life insurance proceeds upon his wife’s death”). Because the trial court relied on distinct aspects of the crime to find CCP and pecuniary gain, Anderson is not entitled to relief on this claim.
 

 Victim Photographs
 

 Anderson asserts that trial counsel was ineffective for failing to object to the introduction of five medical examiner photographs of victim Heather Young. We disagree and conclude that counsel was not deficient and Anderson was not prejudiced.
 

 At trial, the State offered the testimony of Dr. Susan Rendon, who performed Young’s autopsy. Rendon testified about the types of wounds that Young suffered, the wound locations, the places from where bullets were retrieved, and the physical damage caused by the gunshots. Ren-don’s testimony provided the foundation for five autopsy photographs of Young, and the photographs supporting that testimony were admitted into evidence. The photographs illustrate numerous injuries: blunt force trauma from a flat surface, a bullet wound to the neck, a bullet wound to the chin with an exit wound from Young’s eye, an abrasion on Young’s arm that was indicative of blunt force trauma or a defensive wound, and a gunshot wound above Young’s cheek that occurred at close range.
 

 We have previously observed that a victim’s photographs are admissible to “explain a medical examiner’s testimony, to show the manner of death, the location of the wounds, and the identity of the victim.”
 
 Larkins v. State,
 
 655 So.2d 95, 98 (Fla.1995). In Anderson’s case, the photographs of victim Young were relevant to explain the medical examiner’s testimony, demonstrate the location and the nature of the injuries that Young sustained, and illustrate the cause of her death. The photographs were also relevant to proving premeditation. Therefore, trial counsel was not deficient for failing to object to the admission of the photographs.
 

 Moreover, Anderson was not prejudiced by the introduction of the photographs. First, we conclude that the admission of five photographs was not exces
 
 *515
 
 sive in this case. Further, even though the photographs depicted a deceased person, they were not so gruesome as to be unduly prejudicial. The photograph of “the victim after she had been turned over lying in a pool of blood wearing her bloody smock” presented to the jury in
 
 Larkins
 
 was far more gruesome than the five photographs admitted during Anderson’s trial. We nevertheless agreed with the trial court’s admission of the photograph into evidence because it was relevant “to assist the medical examiner in explaining the cause of death to the jury, as well as how and where the victim died.”
 
 Id.
 
 at 98-99.
 

 Anderson also appears to claim ineffective assistance of counsel as to the introduction of three photographs of the surviving victim, Marisha Scott. We reject this claim. On direct appeal, this Court concluded that Scott’s photographs were relevant to show Scott’s identity as well as the location of Scott’s wounds.
 

 Because all of the photographs challenged by Anderson were relevant for a variety of purposes and were properly admitted, counsel’s performance was not deficient. Moreover, as to the photographs of victim Scott, given the overwhelming evidence of Anderson’s guilt, he cannot demonstrate prejudice such that our confidence in the outcome is undermined. Therefore, Anderson is not entitled to relief on this issue.
 

 Improper Testimony
 

 Anderson also claims that counsel was ineffective for failing to object to or seek to limit the testimony of the following witnesses: Deputy Michael Thomas (arresting officer), Kirk Lewis (fire department first responder), Mark O’Keefe (paramedic), Dr. Susan Rendon (medical examiner), Marisha Scott (surviving victim), and Detective James Jicha (conducted hospital interview of Marisha Scott).
 

 Anderson makes only vague assertions with respect to each witness, except for Deputy Thomas. While the deputy was being cross-examined by defense counsel, the following exchange took place:
 

 DEFENSE COUNSEL: You said you looked in the vault after the suspect was under control out there in the lobby, correct?
 

 THOMAS: Yes, sir. And I saw blood splatter and the two -victims lying on the ground as well as, once again, I saw Heather Young, who was still convulsing.
 

 DEFENSE COUNSEL: Excuse me, did you know Miss Young?
 

 THOMAS: No, this was after the fact. I didn’t know the suspect’s name, but I learned of it after the fact. Immediately after I arrested him and got his I.D. Miss Young was deceased, later found out who she was, and Marisha Scott as well, who they were. And as I saw Heather Young on the ground and Mari-sha Scott was pretty much choking on her blood, pretty much trying to grasp for air. I held Heather Young in my arms and she pretty much was just trying to say “help me.” She went.
 

 Anderson argues that the deputy’s testimony about Young dying in his arms and Scott’s struggle to breathe was improper because it was unresponsive to the question and was prejudicial. We disagree.
 

 In his postconviction order, the judge concluded that, although the answer Thomas gave went beyond the scope of the question, the answer was relevant because it related the extent of the victims’ injuries and proved Anderson’s intent to kill. The court also concluded that the testimony was relevant to other testimony presented regarding blood spatter and DNA evidence. We will not disturb the circuit court’s conclusions here. However, even if
 
 *516
 
 counsel’s failure to object or move to strike this testimony was deficient, given the overwhelming evidence of guilt presented, Anderson cannot demonstrate prejudice sufficient to undermine our confidence in the outcome.
 

 As to the other witnesses, Anderson merely states that counsel was ineffective for failing to object to or seek to limit the gruesome and detailed testimony of these witnesses. While he provides the witnesses’ names and the page numbers of then* testimony, he does not cite to any specific statements or portions of the witnesses’ testimony that should have been objected to by counsel.
 

 Anderson also challenges the testimony of both Dr. Rendon, the medical examiner, and Marisha Scott, the surviving victim. However, we agree with the circuit court’s observation as to “the obvious need for that testimony.” The court also addressed the remaining witnesses and concluded that the testimony of Kirk Lewis and Mark O’Keefe as first responders was relevant as evidence of premeditation, as well as to illustrate the victims’ condition and the nature of their injuries. The court also concluded that the testimony of Detective Jicha was relevant because he led the interview during which victim Scott identified Anderson from a photo lineup. Because the admission of the testimony of these witnesses does not undermine our confidence in the verdict in light of the overwhelming evidence of Anderson’s guilt, we also conclude that this claim does not merit relief.
 

 Blood Spatter Testimony
 

 Anderson further contends that counsel was ineffective for failing to make a specific objection to the expert testimony regarding blood spatter at the crime scene. At trial, Senior Crime Technician Farley “Jake” Caudill provided expert testimony on blood spatter evidence found at the scene; and he drew conclusions about the nature of the trauma that caused the spatter. Trial counsel objected to Caudill’s testimony based on his qualifications, but following an extensive voir dire by both the State and the defense, the trial court overruled the objection and permitted the expert to testify. At the conclusion of his testimony, defense counsel asked the court to reconsider its acceptance of Caudill’s testimony as expert testimony, but the court denied the motion.
 

 On direct appeal, Anderson asserted that the admission of Caudill’s testimony was improper because it was of dubious probative value, completely speculative, and highly inflammatory. This Court concluded that the claim was procedurally barred because that specific objection was not raised at trial. Now, Anderson asserts that counsel was ineffective for failing to make that specific objection. We disagree. Even though we determined that the claim was procedurally barred on direct appeal, we examined the claim’s merits and concluded that the trial court did not abuse its discretion in allowing Caudill’s testimony.
 
 Anderson,
 
 863 So.2d at 179. We said:
 

 Even if Anderson’s argument had been preserved, we would conclude that the trial court did not abuse its discretion in allowing Caudill to testify. Cau-dill’s testimony was relevant with regard to the State’s theory on blunt force trauma. Moreover, Anderson’s counsel rigorously cross-examined Caudill, and this cross-examination would have let the trier of fact assess the weight and credibility that should be attached to Caudill’s opinion.
 

 Id.
 
 at 181 (footnote omitted).
 

 Additionally, even if counsel’s failure to object constituted deficient performance, Anderson did not suffer prejudice, and our confidence in the outcome is not
 
 *517
 
 undermined. At best, Caudill’s testimony provided some support to the State’s theory that Anderson hit the victims with a blunt object after shooting them. This testimony provided some corroboration to the medical examiner’s testimony that both victims sustained head injuries that were consistent with blunt trauma.
 

 In the absence of Caudill’s testimony, the jury would still have been exposed to the overwhelming evidence of Anderson’s guilt, including that before the victims suffered blunt trauma, Anderson fired ten shots from two revolvers, six of which required deliberate effort to fire. For these reasons, Anderson is not entitled to relief on this claim.
 

 Prosecutor’s Statements
 

 Anderson contends that trial counsel was ineffective for failing to object to certain misstatements of law by the prosecutor regarding the balance of aggravating and mitigating factors. Florida law provides that a penalty phase jury, after deliberating, shall render an advisory sentence to the court. That sentence is to be based on:
 

 (a) Whether sufficient aggravating circumstances exist ...
 

 (b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and
 

 (c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.
 

 § 921.141(2)(a), Fla. Stat. (2008). “[A] jury is neither compelled nor required to recommend death where aggravating factors outweigh mitigating factors.”
 
 Cox v. State,
 
 819 So.2d 705, 717 (Fla.2002) (quoting
 
 Henyard v. State,
 
 689 So.2d 239, 249-50 (Fla.1996)).
 

 Anderson argues that certain prosecuto-rial statements were worthy of objection because they eliminated the threshold analysis of whether the aggravating circumstances, by themselves, justified the death penalty. For example, Anderson cites the following statement made by the prosecutor during voir dire: “You weigh the aggravating evidence versus the mitigating evidence, and which ever way your personal scale tips, that, under the law, is supposed to be the recommendation you make.”
 

 We agree that this statement does not reflect the proper considerations that the jury must employ when determining whether a defendant should be sentenced to life or death, and we have previously concluded that similar statements were indeed misstatements of law.
 
 See Cox,
 
 819 So.2d at 717 (concluding that the prosecutor misstated the law where the prosecutor told the jury during voir dire that “if the evidence in aggravation outweighs the evidence in mitigation, the law says that you must recommend that Mr. Cox die”);
 
 Henyard v. State,
 
 689 So.2d 239, 249 (Fla.1996) (concluding that the prosecutor misstated the law by telling prospective jurors that under the law, they must recommend death “[i]f the evidence of the aggravators outweighs the mitigators”). Because we conclude that the statements in Anderson’s case were misstatements of law, we also conclude that counsel’s failure to object to those statements was deficient performance.
 

 However, our analysis does not end there. We must also determine whether the
 
 Strickland,
 
 prejudice prong was satisfied. We conclude that it was not. In both
 
 Cox
 
 and
 
 Henyard,
 
 we determined that the defendants were not prejudiced by the improper statements of the prosecutors because the juries were given the proper instructions for analyzing aggravating and mitigating circumstances. In Anderson’s case, the trial court proper
 
 *518
 
 ly instructed the jury that it must first determine whether there were aggravating circumstances sufficient to justify the death penalty and, if so, then proceed to determine whether sufficient mitigating circumstances exist that outweigh the aggravating circumstances. Because Anderson has not demonstrated prejudice, we conclude that he is not entitled to relief on this claim.
 

 State’s Closing Argument
 

 During the guilt phase closing argument, the prosecutor referred to Anderson’s defense as the “National Enquirer Defense” and suggested that after the trial, the jurors could come to him and learn additional facts about the case. Trial counsel objected to the argument. The trial court overruled the objection and warned the State that the comments were improper. Anderson contends, however, that trial counsel was ineffective for failing to seek a curative instruction and a mistrial. We agree that these comments were improper, but we also conclude that counsel’s failure to ask for a curative instruction or move for mistrial did not prejudice Anderson.
 

 When Anderson challenged these comments on direct appeal, this Court concluded that while the comments were improper—because they commented on the quality of the defense and also mentioned the existence of evidence that was not presented at trial—Anderson was not entitled to relief.
 
 Anderson,
 
 863 So.2d at 187. Regarding challenges to prosecutorial comments, we have explained:
 

 In order for the prosecutor’s comments to merit a new trial, the comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.
 

 Spencer v. State,
 
 645 So.2d 377, 383 (Fla.1994).
 

 Ultimately, we decided that although improper, the comments in Anderson’s case did “not approach the level of improper comments in cases where we have granted relief.”
 
 Anderson,
 
 863 So.2d at 187;
 
 cf. Brooks v. State,
 
 762 So.2d 879, 905 (Fla.2000) (vacating death sentence and remanding for new penalty phase in light of the “cumulative effect of the numerous, overlapping improprieties in the prosecutor’s penalty phase closing argument”). Because Anderson is unable to demonstrate prejudice, he is not entitled to relief.
 

 Shackling
 

 Anderson also contends that he was denied due process when he was shackled during trial. We agree with the circuit court’s conclusion that Anderson has not proven a due process violation, and further, we conclude that he has not shown that counsel was ineffective.
 

 This Court has said that “[shackling is an inherently prejudicial practice.”
 
 Bryant v. State,
 
 785 So.2d 422, 429 (Fla.2001) (quoting
 
 Bello v. State,
 
 547 So.2d 914, 918 (Fla.1989)). Because of the danger of prejudice, if a defendant objects and requests an inquiry into whether shackling is necessary, a defendant is entitled to an evidentiary hearing.
 
 Bryant,
 
 785 So.2d at 429. Furthermore, when this type of claim is raised on collateral attack, it should not be summarily denied where the defendant has properly pled both deficient performance and prejudice.
 
 See Jones v. State,
 
 998 So.2d 573 (Fla.2008). The circuit court granted an evidentiary hearing on this issue.
 

 Anderson failed to show that the jury saw or was otherwise aware of Anderson’s
 
 *519
 
 shackles. The primary courtroom bailiff, Karen Nelson, testified that the shackles placed on Anderson’s legs were never visible or audible to the jury. Any time that Anderson was moved from one place to another, he was moved outside of the jury’s presence; and objects were strategically placed to block the jury’s view of the shackles. The court also found that Anderson was not handcuffed at trial, despite Anderson’s allegations to the contrary. Accordingly, the trial court concluded that Anderson did not suffer a due process violation. We agree with the court’s conclusion.
 

 Although Anderson did not raise the shackling claim as an ineffective assistance of counsel claim, we also conclude that counsel was not ineffective here. Even if trial counsel was deficient for not objecting to Anderson’s shackles, we conclude that Anderson did not suffer prejudice. The record does not suggest that the jury was aware of Anderson’s shackles, and competent, substantial evidence supports the circuit court’s conclusion that significant efforts were made to prevent the jury from seeing or hearing them.
 

 Because adequate precautions were taken and there is no indication that the jury was aware of Anderson’s shackles, we conclude that Anderson did not suffer prejudice and is not entitled to relief.
 

 Motion to Interview Jurors
 

 Five years after the trial, Anderson filed a motion to interview jurors on the grounds that he was shackled at trial in view of the jury. Following a hearing, the trial court denied Anderson’s motion because there was no evidence that the jurors observed the shackles and there was no showing of juror misconduct. A trial court’s decision on a motion to interview jurors is reviewed pursuant to an abuse of discretion standard.
 
 Marshall v. State,
 
 976 So.2d 1071, 1077 (Fla.2007).
 

 Because there is no indication in the record that any of the shackles were perceptible to any members of the jury, we agree with the circuit court’s decision and conclude that the court did not abuse its discretion in denying the motion. To have granted the motion would have allowed Anderson to conduct a “fishing expedition” interview of the jurors, a practice which we have previously rejected.
 
 See Arbelaez v. State,
 
 775 So.2d 909 (Fla.2000). Thus, we deny relief on this claim.
 

 Mental Health Evaluation
 

 Anderson argues that he was denied due process because he did not receive a competent mental health evaluation. A defendant whose sanity at the time of the offense is to be an issue at trial must have access to a “competent psychiatrist [or other mental health professional] who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.”
 
 Ake v. Oklahoma,
 
 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Because this claim was not raised on direct appeal, it is procedurally barred. This Court has previously rejected postconviction claims of incompetent mental health evaluations as procedurally barred.
 
 See, e.g., Ponticelli v. State,
 
 941 So.2d 1073, 1105-06 (Fla.2006) (concluding that even if the claim was a valid
 
 Alee
 
 claim, it was procedurally barred because it was not raised on direct appeal);
 
 Whitfield v. State,
 
 923 So.2d 375, 379 (Fla.2005) (rejecting
 
 Alee
 
 claim as procedurally barred because it should have been raised on direct appeal).
 

 Moreover, Anderson’s claim lacks merit. The fact that Anderson’s postconviction experts concluded that he suffered from various mental health disorders does not discount Dr. McMahon’s evaluation, which did not detect any mental disorder or evidence of statutory or nonstatutory mitigation.
 
 *520
 
 Specifically, she did not identify any indicators of psychosis at the time of the evaluation or at the time of the offense, nor did she see indicators of PTSD, brain damage or borderline personality disorder.
 
 See Peede v. State,
 
 955 So.2d 480, 495 (Fla.2007) (“We have consistently held that a mental health investigation is not rendered inadequate ‘merely because the defendant has now secured the testimony of a more favorable mental health expert.’ ” (quoting
 
 Asay v. State,
 
 769 So.2d 974, 986 (Fla.2000))).
 

 Moreover, Anderson’s assertions that the evaluation was not comprehensive are without merit. The circuit court found that Anderson received an extensive mental health evaluation, conducted by an experienced forensic psychologist with significant exposure to death penalty cases. We agree with the circuit court’s conclusions on this issue and will not disturb them. Consequently, we affirm the circuit court’s denial of relief.
 

 Cumulative Error
 

 Because Anderson’s claims, addressed individually, do not give rise to conclusions of ineffective assistance of counsel or that Anderson’s constitutional rights were violated, we reject Anderson’s claim of cumulative error.
 
 See Israel v. State,
 
 985 So.2d 510, 520 (Fla.2008) (“Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit.”). Anderson’s claim for relief based on cumulative error is denied.
 

 ANDERSON’S HABEAS CLAIMS
 

 Ineffective Assistance of Appellate Counsel
 

 Anderson contends that certain omissions by his appellate counsel constituted ineffective assistance of appellate counsel. Specifically, Anderson contends that appellate counsel was ineffective for (1) failing to raise the trial court’s denial of Anderson’s motion to change venue; (2) failing to ensure a complete record on appeal; (3) failing to raise a claim regarding the presence of Anderson and the trial judge when the jury was sworn; and (4) failing to raise as an issue the absence of the jury instruction regarding merging aggravating factors. Additionally, although he concedes that the claim is not yet ripe, Anderson asserts that he is incompetent to be executed. We address each claim in turn and conclude that none of Anderson’s claims merits relief.
 

 Appellate counsel’s ineffectiveness is properly raised in a petition for writ of habeas corpus.
 
 See Freeman v. State,
 
 761 So.2d 1055, 1069 (Fla.2000). In order to grant habeas relief on the basis of ineffectiveness of appellate counsel, this Court must determine
 

 whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
 

 Pope v. Wainwright,
 
 496 So.2d 798, 800 (Fla.1986). “The defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based.”
 
 Freeman,
 
 761 So.2d at 1069.
 

 Change of Venue
 

 Anderson contends that appellate counsel was ineffective for failing to raise as an issue the trial court’s denial of Anderson’s motion to change venue. However, we conclude that appellate counsel was not deficient because the claim has no
 
 *521
 
 merit. This Court has articulated the standard for a change of venue as follows:
 

 Knowledge of the incident because of its notoriety is not, in and of itself, grounds for a change of venue. The test for determining a change of venue is whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely upon the evidence presented in the courtroom.
 

 McCaskill v. State,
 
 344 So.2d 1276, 1278 (Fla.1977) (quoting
 
 Kelley v. State,
 
 212 So.2d 27, 28 (Fla. 2d DCA 1968)). Furthermore, “absent an extreme or unusual situation, the need to change venue should not be determined until an attempt is made to select a jury.”
 
 Henyard v. State,
 
 689 So.2d 239, 245 (Fla.1996).
 

 Anderson’s jury selection process was extensive. His jury selection began on a Monday and the guilt phase did not begin until the following Wednesday afternoon. The record reflects that a significant amount of time was devoted to determining the extent of potential jurors’ pretrial exposure. The State and the defense were able to select a panel of fifteen jurors, including three alternates. Given this extensive and meticulous jury selection process, there was no meritorious claim that appellate counsel could have raised. Appellate counsel cannot be deemed ineffective for failing to raise meritless issues.
 
 See Brown v. State,
 
 846 So.2d 1114, 1128 (Fla.2003). Thus, Anderson is not entitled to habeas relief on this claim.
 

 Record on Appeal
 

 Anderson also argues that appellate counsel was ineffective for failing to ensure a proper record on appeal. He specifically refers to the omission of jury questionnaires from the record, which he contends reflect significant juror bias and lend credence to his argument that the motion for change of venue should have been granted. We note that the questionnaires are not a part of the record before this Court and thus consideration of their content is improper.
 

 Even if appellate counsel was deficient in failing to preserve the questionnaires as a part of the appellate record, Anderson did not suffer prejudice. A review of the trial transcript shows that prospective jurors were questioned extensively about their exposure to the case and whether that exposure would compromise their ability to sit as fair and impartial jurors. Because the trial court did not err in denying the motion to change venue, Anderson did not suffer prejudice by not having the questionnaires as a part of the record on appeal, and he is not entitled to relief.
 

 Defendant’s Presence During Jurors’ Oath
 

 Anderson contends that appellate counsel was ineffective because appellate counsel did not challenge his and the judge’s absence when the prospective jurors were sworn for voir dire. Florida Rule of Criminal Procedure 3.180(a)(4) requires that the defendant be present “at the beginning of trial during the examination, challenging, impaneling, and swearing of the jury.” Anderson asserts that his right to be present at the beginning of trial included when the jury was sworn for voir dire. However, we have previously rejected this argument and have held that the prior general qualification process does not require the defendant’s presence.
 
 See Robinson v. State,
 
 520 So.2d 1, 4 (Fla.1988) (“[W]e do not find that process to be a critical stage of the proceedings requiring the defendant’s presence.”).
 

 Immediately before opening statements, with Anderson present, the jury
 
 *522
 
 was sworn. This satisfies the requirement that the defendant be present when the jury is sworn, and therefore Anderson’s claim is not well taken. “Appellate counsel is expected to raise those claims which are deemed to have the most merit, and is not ineffective for failing to raise meritless issues.”
 
 Brown,
 
 846 So.2d at 1128 (citing
 
 Downs v. Moore,
 
 801 So.2d 906, 910 (Fla.2001)). Therefore, Anderson’s request for habeas relief on this issue is denied.
 

 Jury Instruction on Merging Aggravating Factors
 

 Anderson contends that appellate counsel was ineffective for failing to challenge the absence of the merging instruction during the penalty phase jury instructions. Appellate counsel cannot be deemed ineffective for failing to raise a claim that has no merit.
 
 See Brown,
 
 846 So.2d at 1128. As we discussed, the merging instruction is appropriate where there are duplicative aggravating factors.
 
 See Castro v. State,
 
 597 So.2d 259 (Fla.1992). On the facts of Anderson’s case, CCP and pecuniary gain were not duplicative aggravating factors, and Anderson was not entitled to the merging instruction. That being the case, appellate counsel cannot be deemed ineffective for not raising this issue on appeal. Therefore, Anderson is denied relief on this claim.
 

 Incompetency to be Executed
 

 Anderson asserts that he may be incompetent at the time of execution. Florida Rule of Criminal Procedure 3.811(a) provides that “[a] person under sentence of death shall not be executed while insane to be executed.” Subdivision (c) of the same rule provides that “[n]o motion for a stay of execution pending hearing, based on grounds of the prisoner’s insanity to be executed, shall be entertained by any court until such time as the Governor of Florida shall have held appropriate proceedings for determining the issue pursuant to the appropriate Florida Statutes.”
 

 Anderson concedes that this claim is not ripe for review as he has not yet been found incompetent and a death warrant has not yet been signed. He states that he is only raising this issue for preservation purposes. This Court has repeatedly found that no relief is warranted on similar claims.
 
 See State v. Coney,
 
 845 So.2d 120, 137 n. 19 (Fla.2003) (rejecting Coney’s claim that he was insane to be executed where he acknowledged that claim was not yet ripe and was being raised only for preservation purposes);
 
 Jones v. State,
 
 845 So.2d 55, 74 (Fla.2003) (finding claim that defendant may be insane to be executed “not ripe for review” where defendant was not yet found incompetent and death warrant had not yet been signed and noting that defendant made the claim “simply to preserve it for review in the federal court system”). Thus, Anderson is not entitled to habeas relief on this claim.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the trial court’s denial of postconviction relief, and we also deny Anderson’s petition for writ of habeas corpus.
 

 It is so ordered.
 

 QUINCE, C.J, and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), (9), Fla. Const.
 

 [2]
 

 . Anderson's contemporaneous conviction for the attempted murder of Marisha Scott was the basis for the prior violent felony aggravating factor.
 

 [3]
 

 .
 
 Huff v. State,
 
 622 So.2d 982 (Fla.1993).
 

 [4]
 

 . Minnesota Multiphasic Personality Inventory-2.