PER CURIAM.
John M. Buzia, a prisoner under sentence of death, appeals an order of the circuit court denying his initial motion under Florida Rule of Criminal Procedure 3.851 to vacate his conviction of first-degree murder and sentence of death and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the postconviction court’s order denying relief, and we deny the habeas petition.
I. BACKGROUND
Buzia was indicted, tried, and found guilty of the first-degree murder of Charles Kersch, the attempted first-degree murder of Thea Kersch, armed burglary of a dwelling with an assault or battery, and robbery with a deadly weapon. Buzia v. State, 926 So.2d 1203, 1206 (Fla.2006). The jury in an eight-to-four vote recommended a sentence of death for the murder, and the trial court so sentenced him.
The evidence at trial showed that on the afternoon of March 14, 2000, Buzia took a bus to the home of Charles and Thea Kersch, a retired couple for whom he had been doing handyman work. Id. at 1206. Later, when Mrs. Kersch pulled into the driveway, she directed him to wait outside on the patio until her husband arrived. Soon, however, Buzia used the artifice of returning to her a tray from the patio to get her to open the door. He then attacked her, hitting and kicking her until she was unconscious. After taking money from her purse, he dragged her into a back bedroom. Buzia began searching through the house for money and took a credit card from Mrs. Kersch’s purse. Upon hearing Mr. Kersch arrive in the garage, Buzia decided to assault him also. He waited and then struck Mr. Kersch as he entered the door into the kitchen. Mr. Kersch fell to the floor, bleeding profusely, and Buzia hit him again when he tried to rise. Buzia went twice to the garage, each time returning with an axe, and he hit each of the victims with the axe. As Mr. Kersch lay on the floor, Buzia took money from Mr. Kersch’s wallet. Id. at 1207. Then, after trying to clean up the house and changing his shirt, Buzia took Mr. Kersch’s car keys and drove away in his car. The next *790 morning, Buzia was arrested at a bank where he was attempting to cash a check drawn from the Kersches’ account. Id.
In determining the sentence, the trial court found the following with regard to mitigation:
[T]he court assigned little weight to two factors under the statutory catchall provision, section 921.141(6)(h), Florida Statutes (2003), specifically Buzia’s interaction with the community and his work record. The court also found seven nonstatutory mitigating factors and ascribed weight as follows: (1) influence of a mental or emotional disturbance, not extreme in nature (substantial weight); .(2) Buzia’s capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired, but not substantially (substantial weight); (3) gainful employment (little weight); (4) appropriate courtroom behavior during the guilt and penalty phases of the trial and during the Spencer hearing (little weight); (5) cooperation with law enforcement (little weight); (6) difficult childhood (little weight); and (7) remorse (little weight).
Buzia, 926 So.2d at 1208. The trial court also found six aggravating circumstances, ascribing four of them great weight and two no weight:
(1) that Buzia was previously convicted of another capital offense or of a felony involving the use of violence to some person [great weight]; (2) that the murder was committed while he was engaged in the commission of or flight after committing or attempting to commit the crime of kidnapping [no weight]; (3) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody [great weight]; (4) that the murder was committed for financial gain [no weight]; (5) that the murder was especially heinous, atrocious, or cruel (“HAC”) [great weight]; and (6) that the murder was committed in a cold, calculated, and premeditated manner, and without any pretense of moral or legal justification (“CCP”) [great weight].
Buzia, 926 So.2d at 1207-08. Concluding that the aggravators outweighed the mitigation, the trial court sentenced Buzia to death for the first-degree murder of Charles Kersch.
After rejecting Buzia’s challenges to four of the aggravating circumstances found in this case and determining the proportionality of the death sentence and that competent, substantial evidence supported the murder conviction, this Court affirmed the judgment and sentence in Buzia’s direct .appeal. Id. at 1218. Subsequently, Buzia filed an initial motion for postconviction relief. The postconviction court denied the motion after holding an evidentiary hearing on some of his claims and summarily denied the others. Buzia then filed this appeal of the denial of his postconviction motion and filed a petition for writ of habeas corpus.
II. POSTCONVICTION CLAIMS
In this appeal, Buzia raises the following claims: (A) trial counsel was ineffective for failing to develop and present mitigation; (B) trial counsel was ineffective for failing to file a motion to suppress his confession; (C) trial counsel was ineffective for failing to have the jury view the entire confession tape; (D) trial counsel was ineffective in the guilt phase; (E) the postconviction court violated Buzia’s right to due process by summarily denying several claims; (F) the postconviction court erred in denying claims regarding the testimony of the fingerprint examiner; (G) the postconviction court erred in denying Buzia’s claim that *791 the State committed a Brady[1] violation by not conducting promised blood testing; (H) cumulative error deprived Buzia of a fair trial; and (I) Buzia may be incompetent to be executed. Each of these claims will be addressed in turn.
A. Presentation of Mitigation
Buzia argues that trial counsel provided constitutionally ineffective assistance by failing to investigate and present mitigation in the penalty phase. To demonstrate ineffective assistance, the defendant must establish both deficient performance and prejudice under the following standard: (1) that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment”; and (2) that “counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To meet the first prong, “the defendant must show that counsel’s representation fell below an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. As to the second prong, the appropriate test for prejudice is whether' “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Thus, as to this mitigation claim, the defendant must show that counsel’s error deprived him of a reliable penalty phase proceeding. See Henry v. State, 987 So.2d 563, 569 (Fla.2006). Because the postconviction court denied this claim after an evi-dentiary hearing, this Court reviews that court’s findings of fact to determine whether they are supported by competent, substantial evidence. We review questions of law de novo.
Buzia raises three subclaims regarding the presentation of mitigation in the penalty phase. Specifically, he argues that counsel failed to develop and present evidence of brain damage and of Buzia’s “genetic predisposition” to substance abuse. Further, he claims that counsel failed to prepare witnesses and present a “persuasive narrative” of Buzia’s life.
At the evidentiary hearing, Buzia presented experts who testified that he suffered a temporal lobe injury when his cheekbone was broken in a 1994 incident. They opined that the effect of the mild impairment coupled with Buzia’s drug addiction resulted in extreme mental disturbance and the inability to conform his conduct to the requirements of law, the two statutory mitigators. § 921.141(6)(b), (f), Fla. Stat. (1999). The postconviction court denied the claim, and we affirm.
Buzia has failed to meet either prong of the Strickland test. Competent, substantial evidence demonstrates that prior to trial, Dr. Riebsame, a forensic psychologist, interviewed and tested Buzia, and was aware of Buzia’s 1994 injury. An MRI showed only a venous angioma — a brain abnormality related to seizures — but Buzia did not suffer from seizures. Moreover, Buzia’s history indicated no patterns of academic failure, poor impulse control, or violence, and Buzia was steadily employed, including holding positions with management responsibilities. Dr. Riebsame informed trial counsel that Buzia had no indication or history of cognitive impairment and did not recommend any further neurological testing. Accordingly, trial counsel reasonably relied on this expert’s conclusion. See Darling v. State, 966 *792 So.2d 366, 377 (Fla.2007) (“Even if the evaluation by [a mental-health expert], which found no indication of brain damage to warrant a neuropsychological workup, was somehow incomplete or deficient in the opinion of others, trial counsel would not be rendered ineffective for relying on [the expert’s] qualified ... evaluation.”). “This Court has repeatedly held that counsel’s entire investigation and presentation will not be rendered deficient simply because a defendant has now found a more favorable expert.” Card v. State, 992 So.2d 810, 818 (Fla.2008). Finally, Buzia has not established prejudice. First, contrary to Buzia’s claims, the conclusions of his witnesses at the evidentiary hearing were disputed by the State’s witnesses. Moreover, Buzia’s post-1994 life did not reflect a history of violence and impulsivity, and no expert testified that the mild impairment, standing alone, substantially affected Buzia’s life or ability to function. Finally, the trial court found and gave great weight to four aggravators applicable to the murder: the murder was especially heinous, atrocious, or cruel (HAC); the murder was committed in a cold, calculated, and premeditated manner and without any pretense of moral or legal justification (CCP); Buzia had a prior violent felony conviction; and the murder was committed to avoid lawful arrest.
Buzia next contends that counsel was ineffective because he should have pursued a “bad is good” strategy and presented more evidence of the substance abuse within Buzia’s own family to demonstrate a predisposition to drug and alcohol abuse. At the penalty phase, defense counsel’s strategy was to show that Buzia was a good guy whose life fell apart as his addiction to drugs grew and that the violent murder was an uncharacteristic act. To support this theme, counsel presented fourteen lay witnesses, including family members, friends, employers, and coworkers, who knew Buzia at various stages in his life and whose testimony supported this strategy. Further, Dr. Riebsame testified at length about his testing, examination, and diagnosis of Buzia and about Buzia’s history of alcohol and drug abuse. All told, the testimony showed that Buzia was a popular student athlete and then a young adult who held managerial level positions. As his addiction to drugs increased, however, his life became more uncertain, and he resorted to working short-term jobs in lawn maintenance and as a handyman to support his habit. Based on his interviews with Buzia and members of his family, Dr. Riebsame opined that Buzia’s family was “a classic dysfunctional family” and alcoholism was a major factor in the family’s life. Accordingly, Buzia has not established that counsel was deficient, and we affirm the post-conviction court’s denial of this claim.
Finally, Buzia argues that counsel was ineffective because he failed to adequately prepare and present witnesses. The evidence shows counsel and an investigator worked with Buzia to locate potential witnesses. Although there were few face-to-face meetings between counsel and witnesses, counsel spoke to most of them by phone or they were deposed. Moreover, in preparing Buzia’s mother to testify, counsel discussed with her the various issues of dysfunction within the family, especially regarding substance abuse, and relied on her to present such testimony. On the stand, however, Buzia’s mother apparently became embarrassed and resisted all efforts by trial counsel to develop any of this unflattering family history, except as to Buzia’s father. Counsel cannot be found deficient because a witness “choked” on the stand. Moreover, much of Buzia’s argument regarding presentation of testimony is based on his view that counsel *793 should have presented more witnesses. However, the evidence shows that some of the witnesses Buzia presented at the evi-dentiary hearing either had expressed a reluctance to testify — and thus counsel reasonably chose not to use them — or had provided conflicting representations. In addition, much of the testimony was cumulative of the testimony given at the penalty phase. As stated above, counsel presented numerous witnesses to paint a picture of Buzia’s life that was consistent with his strategy. Buzia’s claims of ineffectiveness are based largely on the idea that more is better. However, this is not the standard for determining ineffectiveness. See Barnhill v. State, 971 So.2d 106, 116 (Fla.2007) (“The fact that there were other witnesses available who could have testified ... does not demonstrate that counsel was ineffective in choosing the theory and strategy that was presented at the penalty phase.”). Accordingly, we affirm the post-conviction court’s denial of relief on this claim.
B. Failure to File Motion to Suppress
Buzia argues that the postconviction court erred in denying his claim that trial counsel provided ineffective assistance by failing to move to suppress his confession on the ground that the waiver of his constitutional rights was neither knowing nor voluntary due to his intoxication from drugs and alcohol. As stated previously, to establish ineffective assistance, a defendant must meet both prongs of the Strickland test: deficient performance and prejudice. 466 U.S. at 694, 104 S.Ct. 2052. Buzia has not established either prong.
The evidence shows that Buzia was arrested the morning after the crime while he was trying to cash a check on his victims’ account. He was compliant with police throughout the morning, and he was interviewed at approximately 10:30 a.m. Buzia responded “yes, sir,” indicating that he understood the rights that he waived and proceeded to give a detailed account of the crime. At trial, one of the interrogating officers testified that he was trained to recognize when people are under the influence of drugs or alcohol, and he saw no such indications with Buzia. According to the officer, Buzia appeared to understand the questions asked and was responsive to them. At the postconviction evidentiary hearing, defense counsel testified that he did not file a motion to suppress the confession because he did not know of a sufficient basis to support it. In fact, no evidence was presented showing that Buzia was intoxicated at the time of his confession. Dr. Morton, Buzia’s expert, testified that he understood from Buzia that Buzia used cocaine before and soon after committing the crime. However, Dr. Morton stated that in the confession video, Buzia demonstrated only “mild” symptoms of withdrawal. He did not conclude that Bu-zia was under the influence of drugs or that Buzia’s confession and waiver of rights were coerced or involuntary. See Davis v. State, 990 So.2d 459, 464 (Fla.2008) (“Because Davis has not demonstrated that he was under the effects of LSD at his confession, he did not establish that LSD had a coercive impact on his confession or that counsel was deficient in declining to call an expert to so testify.”).
C. The Complete Interview Tape
Buzia argues that the postconviction court erred in denying his claim that defense counsel provided deficient performance by moving to exclude from evidence the final twenty minutes of the interview tape, a motion that the trial court granted. The videotape contained post-interview interaction between the interrogating officers and Buzia. Buzia claims that he was prejudiced because the jury did not have the opportunity to see and hear Buzia express remorse and compás *794 sion for his victims, which gave the State the ability to argue that Buzia showed no remorse. We conclude that Buzia did not establish either prong of Strickland.
The evidence shows that when defense counsel moved to exclude the conclusion of the confession videotape, he represented that Buzia concurred in this decision. Moreover, at the postconviction evidentiary hearing, defense counsel testified that although Buzia expressed remorse in that part of the tape, another exchange contained therein was more harmful. Stating that he did not want to spend time in prison, Buzia asked one of the officers to give him a gun. Defense counsel feared that a jury hearing this would be more apt to vote for the death penalty. In addition, defense counsel did not want the jury to hear references to Buzia’s criminal record. Thus, counsel’s decision to move to exclude the conclusion of the tape was strategic. “[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Schoenwetter v. State, 46 So.3d 585, 553 (Fla.2010) (quoting Occhicone v. State, 768 So.2d 1087, 1048 (Fla.2000)).[2]
D. Guilt Phase Ineffectiveness
In this issue, Buzia contends that the postconviction court erred in denying his claims that defense counsel was ineffective during the guilt phase of trial (1) for failing timely to preserve and test blood samples taken from him when he was arrested; (2) for failing to present evidence of Bu-zia’s brain damage to negate premeditation; and (3) for failing to present an effective closing argument. Each argument is addressed separately below.
1. Preservation of Blood Samples
Buzia argues that defense counsel provided deficient performance when he failed to ensure that Buzia’s blood was tested promptly for the presence of alcohol and drugs at the time of the offense. He claims a positive test result for the presence of cocaine would have supported a motion to suppress his confession and provided evidence to negate premeditation. Buzia has not demonstrated either prong of Strickland.
Competent, substantial evidence shows that that Buzia committed the offense in the afternoon of March 14, 2000; he was arrested on the morning of March 15; and the State took hair and blood samples at about 7 p.m. Soon after his appointment, counsel interviewed Buzia and then filed a motion to preserve these samples for testing. The court granted the motion upon the prosecutor’s representation that the State would test the samples and preserve them for the defense. Defense counsel subsequently discovered that the State did not have the blood tested for drugs and ordered independent testing. The samples tested negative for cocaine. Accordingly, Buzia has not demonstrated that defense counsel unreasonably relied on the prosecutor’s representation that testing would be conducted. Moreover, Buzia did not demonstrate that if the blood had been tested sooner, cocaine would have been detected. Experts testified that cocaine is rapidly eliminated from the body and that cocaine metabolites usually remain for only twelve to eighteen hours, and at most *795 twenty-six hours. By the time the blood sample was drawn in this case, the sample would not have shown the presence of cocaine at the time of the murder.
Buzia claims he was prejudiced because the delay in testing deprived him of a defense to premeditated murder. Voluntary intoxication, however, is not a valid defense to the crime. See § 775.051, Fla. Stat. (1999) (“Voluntary intoxication resulting from the consumption, injection, or other use of alcohol or other controlled substance as described in chapter 893 is not a defense to any offense proscribed by law.”). Buzia also claims that timely testing would have provided some evidence to support a motion to suppress the confession. As discussed previously, none of the testimony at the postconviction evidentiary hearing supports a determination that Bu-zia’s confession was involuntary. One of the interrogating officers familiar with the signs of drug use testified that he saw no indication that Buzia was under the influence and that Buzia expressly denied using drugs. In addition, Dr. Morton, Buzia’s expert witness, testified that Buzia showed “mild symptoms” of withdrawal, but he did not testify that Buzia was under the influence and could not understand his rights.
2. Brain Damage and Premeditation
In this claim Buzia urges that trial counsel was ineffective for failing to discover and present evidence that an incident in which Buzia was struck with a pipe resulted in brain damage that negated the element of premeditation. We concluded previously that defense counsel was not ineffective in the penalty phase because he was entitled to rely on his mental health expert, who found no evidence of brain damage resulting from the 1994 incident. See Darling v. State, 966 So.2d at 377. For this same reason we conclude he was not ineffective for failing to present evidence of brain damage in the guilt phase. In addition, although Buzia’s expert testified at the postconviction hearing that Bu-zia’s brain damage along with his drug addiction made him more impulsive, no one testified that the brain damage alone negated premeditation. Moreover, we previously concluded competent, substantial evidence demonstrates not only that Buzia was capable of forming premeditation but that the evidence supported the trial court’s finding that the CCP aggravator applied to this murder. Buzia, 926 So.2d at 1214. Finally, to the extent Buzia may be claiming again that his drug use negated premeditation, we have previously stated that voluntary intoxication does not negate premeditation.
3. Closing Argument
Finally, Buzia contends that his counsel provided ineffective assistance by failing to present an effective closing argument. We affirm the postconviction court’s denial of this claim. The evidence shows that defense counsel planned to use the strategy of giving the more substantive closing argument in rebuttal so that the State would not have an opportunity to respond. Accordingly, counsel gave the initial closing in which he generally discussed burden of proof and reasonable doubt so that co-counsel could argue the rebuttal. However, the State unexpectedly waived closing argument, thus precluding any rebuttal argument by the defense. We have stated that “an attorney is not ineffective for decisions that are a part of a trial strategy that, in hindsight, did not work out to the defendant’s advantage.” Mansfield v. State, 911 So.2d 1160, 1174 (Fla.2005) (concluding counsel not ineffective where strategy to give substantive argument in rebuttal was thwarted when the State opted not to make a closing argument).
*796 E. Summary Denial of Claims
Buzia argues that the postconviction court erred in summarily denying four of his claims. As explained below, we disagree and affirm their denial.
1. Drug and Alcohol Use
Buzia contends that counsel was ineffective for failing to investigate and present evidence of his addiction to drugs and alcohol in the guilt phase to demonstrate that the murder was spontaneous, not planned. This evidence was, however, presented during the penalty phase. As we stated previously, voluntary intoxication cannot provide a legal defense to a crime. See § 775.051, Fla. Stat. Moreover, on direct appeal, we not only found competent, substantial evidence supporting the conviction, but we also affirmed the finding of the CCP aggravator, which requires a finding of heightened premeditation. Buzia, 926 So.2d at 1214-15. Accordingly, the postconviction court did not err in summarily denying this claim.
2. Preservation of Error
Buzia alleged that counsel was deficient for failing to object when the prosecutor once referred to Buzia as an “axe murderer” in penalty phase closing argument. Because Buzia’s claim is conclusively refuted by the record, we affirm the trial court’s summary denial of this claim. See Kimbrough v. State, 886 So.2d 965, 981-82 (Fla.2004) (stating standard for reviewing summary denial of postconviction claim). The indictment charged Buzia with premeditated murder “by hitting and/or striking Charles Kersch with his hands and/or an axe,” and the evidence showed that the victim died after Buzia struck him with an axe. Thus, the prosecutor’s singular characterization of Buzia constituted fair comment on the evidence. See Spann v. State, 985 So.2d 1059, 1068 (Fla.2008) (“Because the prosecutor was making a fair comment based on the evidence presented at trial, counsel cannot be deemed ineffective for failing to object.”).
3. Special Verdict Form
We affirm the postconviction court’s summary denial of Buzia’s claim that counsel was ineffective for failing to request a special verdict form requiring the jurors to specify each aggravator found and the vote on each. We have held that it is error to use such forms. State v. Steele, 921 So.2d 538, 546 (Fla.2005) (“Our current system fosters independence because the trial court alone must make detailed findings about the existence and weight of aggravating circumstances; it has no jury findings on which to rely. Individual jury findings on aggravating factors would contradict this settled practice.”); see Lebron v. State, 982 So.2d 649, 664 (Fla.2008) (stating that use of such a verdict form may constitute harmless error).
4. Mental Health Exam
Buzia argued in his postconviction motion that he was deprived of his due process right to a competent mental health evaluation under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Buzia correctly acknowledges here that this claim is procedurally barred. Marshall v. State, 854 So.2d 1235, 1248 (Fla.2003) (holding claim of deprivation of right to competent mental health evaluation was “procedurally barred because it could have been raised on direct appeal”) (citing Cherry v. State, 781 So.2d 1040, 1047 (Fla.2000) (“Moreover, the claim of incompetent mental health evaluation is procedurally barred for failure to raise it on direct appeal.”)).
F. Testimony of the Fingerprint Examiner
At Buzia’s 2003 trial, Donna Birks, then a latent print examiner of the Seminole *797 County Sheriffs Office, testified that a bloody palm print found on a cabinet in the Kersches’ garage near where the axes were kept matched Buzia’s. In 2007, as a result of an internal investigation into Birks’ work, Buzia’s counsel was sent notice of investigatory findings regarding the unreliability of her identifications that resulted in Birks’ dismissal. Accordingly, postconviction counsel hired a latent print expert, who reported that the print did not match Buzia’s. However, the print was insufficient to match it to anyone; thus, Buzia could not be excluded as the person who made it. Another expert confirmed this opinion. Accordingly, with regard to this evidentiary development, Buzia alleged claims of ineffective assistance of counsel, a Brady violation, and newly discovered evidence. The postconviction court denied the claims, and Buzia reasserts them here. As explained below, we affirm the denials of these claims.
1. Ineffective Assistance of Counsel Claim
Buzia urges that had trial counsel hired an independent expert to examine the bloody palm print, the expert would have testified the print did not match Bu-zia’s and such testimony would have negated premeditation. Buzia has failed to meet either prong of Strickland. Regardless of Birks’ stellar reputation as a fingerprint expert at the time of the trial, defense counsel had no basis for questioning whether the palm print was Buzia’s. Mrs. Kersch identified Buzia, whom she knew, and Buzia confessed to the crime, including admitting that he obtained two axes from the garage. There was no reasonable basis for questioning whose palm print it was. Moreover, Buzia’s expert testified at the postconviction hearing that Buzia could not be excluded as having left the print. Such testimony would have no effect on the ample evidence of premeditation presented at trial.
2. Brady Claim
To establish a Brady violation, a defendant must show: (1) that favorable exculpatory or impeaching evidence (2) was suppressed by the State, either willfully or inadvertently, and (3) that the evidence was material. See Guzman v. State, 868 So.2d 498, 508 (Fla.2003). Evidence is material or prejudicial if there is a reasonable probability that had the evidence been disclosed, the result of the proceeding would have been different. See Byrd v. State, 14 So.3d 921, 925 (Fla.2009). That is, the undisclosed favorable evidence, reasonably “considered in the context of the entire record,” must undermine confidence in the verdict. Carroll v. State, 815 So.2d 601, 619 (Fla.2002). Buzia has not met this test.
To the extent that favorable evidence that the print was not a match was suppressed, there is no prejudice. Buzia’s expert established only that Buzia could not be excluded. In light of Buzia’s confession and the other evidence presented at trial, the evidence regarding the print does not undermine our confidence in the verdict.
3. Newly Discovered Evidence
Finally, this Court established a two-part test for determining whether a defendant is entitled to relief for a newly discovered evidence claim. First, the evidence must have been unknown at the time of trial, and it must appear that the defendant and his counsel could not have known the facts by the use of due diligence. Jones v. State, 709 So.2d 512, 521 (Fla.1998). “Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.” Id. (citing Jones v. State, 591 So.2d 911 (Fla.1991)). Buzia has not met the second prong. As previously stated, *798 evidence that the print is not an exact match but does not exclude Buzia would not negate the evidence of premeditation presented at trial. Thus, the evidence regarding the palm print would not probably result in acquittal on retrial. See Aguirre-Jarquin v. State, 9 So.3d 593, 603 (Fla.2009) (affirming denial of newly discovered evidence claim based on expert’s faulty palm print identification where “vast amount of evidence” linked defendant to murders).
G.Alleged Brady Violation
Previously, we concluded that defense counsel was not ineffective regarding the State’s failure timely to test Bu-zia’s blood sample for drugs. Here, Buzia contends that the State’s failure constituted a Brady violation. He claims in conelu-sory fashion that timely testing would have provided evidence that he was under the influence of cocaine at the time of the murders, supported a finding of the mental health mitigators, and bolstered a motion to suppress his confession. To establish his claim, Buzia must show that the State willfully or inadvertently suppressed favorable exculpatory or impeaching evidence that was material. Thus, he must demonstrate that had the evidence been disclosed, there is a reasonable probability that the result would have been different. See Carroll, 815 So.2d 601. “In other words, the favorable evidence must place ‘the whole case in such a different light as to undermine confidence in the verdict.’ ” Jones v. State, 998 So.2d 573, 581 (Fla.2008) (quoting Smith v. State, 931 So.2d 790, 796 (Fla.2006)).
Clearly, the evidence shows that the State did not timely test the sample of Buzia’s blood drawn at the time of his arrest. The evidence shows, however, that timely testing of the sample would not have shown that Buzia was under the influence of cocaine at the time of the crime. Thus, as to his first two claims, no favorable evidence was suppressed. Testimony at the evidentiary hearing, however, indicates that a timely test might have shown the presence of cocaine at the time of Buzia’s confession. As discussed previously, however, Buzia’s own expert did not testify that Buzia’s confession was involuntary, and the interrogating officer testified that Buzia was responsive to the questions asked. Moreover, Buzia’s detailed confession matched the established facts of the crime. Accordingly, evidence that Buzia may have had cocaine present in his system during his police interview would not have resulted in suppression of the confession, and there is no reasonable probability that such evidence would result in a different outcome. Thus, our confidence in the verdict is not undermined.
H.Cumulative Error
Buzia alleges that the cumulative effect of errors in this case warrants relief. However, because each of Buzia’s claims of error fails individually, he is entitled to no relief for cumulative error. Schoenwetter, 46 So.3d at 562.
I.Incompetence to Be Executed
Finally, Buzia alleges that he may be incompetent at the time of execution but concedes that this claim is not ripe for consideration. See Anderson v. State, 18 So.3d 501, 522 (Fla.2009). “This Court has repeatedly found that no relief is warranted on similar claims.” Id. Accordingly, we deny this claim.
III. HABEAS CLAIMS
In his petition for writ of habeas corpus, Buzia raises two claims of ineffective assistance of appellate counsel. To establish that appellate counsel provided constitutionally ineffective assistance, a petitioner must demonstrate that (1) counsel committed a serious error or substantial *799 deficiency falling measurably outside the range of professionally acceptable performance; and (2) that this deficiency in performance so compromised the appellate process that confidence in the correctness of the result is undermined. Cox v. State, 966 So.2d 337, 365 (Fla.2007) (citing Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986)). We apply this standard to each of Buzia’s claims below.
A. Motion for Judgment of Acquittal
Buzia argues that in his direct appeal, counsel should have raised the trial court’s denial of his motion for judgment of acquittal on the charge of armed burglary of a dwelling with an assault or battery. He claims that if appellate counsel had raised these issues, this Court would have reversed his convictions for burglary and felony murder and granted him a new trial.
Under the pertinent statute, burglary is defined as “entering or remaining in a dwelling ... with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.” § 810.02(1), Fla. Stat. (1999). In moving for judgment of acquittal in the trial court, Buzia argued that under Delgado v. State, 776 So.2d 233 (Fla.2000), the burglary conviction cannot stand because he was an invitee.
In Lynch v. State, 2 So.3d 47, 61 (Fla.2008), we summarized our holding in Delgado as follows:
In Delgado, we held that the rule of lenity (codified in section 775.021(1), Florida Statutes) required that the “remaining in” element of burglary be limited to situations where the defendant surreptitiously remains after having received consent to enter; otherwise, the State could charge that a burglary had occurred in any situation in which an individual entered a dwelling with consent and later committed an offense therein.
(Emphasis added.) “[T]he essence of Delgado is that evidence of a crime committed inside the dwelling, structure, or conveyance of another cannot, in and of itself, establish the crime of burglary. Stated differently, the State cannot use ‘the criminal act to prove both intent and revocation’ of the consent to enter.” State v. Ruiz, 863 So.2d 1205, 1211 (Fla.2003) (quoting Delgado, 776 So.2d at 238). As a result, consensual entry remained an affirmative defense to the charge of burglary, and the burden remained on the defendant “to establish that there was consent to enter.” Delgado, 776 So.2d at 240.
When Thea Kersch first encountered Buzia in her driveway, she instructed Bu-zia to wait for her husband in the screened patio and pool area behind the house. Bu-zia was never permitted inside the house unless Mr. Kersch was present. She then drove into the garage and entered her kitchen through a door leading directly from the garage. Meanwhile, Buzia walked around the outside of the house and entered the attached screened area. After sitting at the patio table a short while, Buzia approached the closed sliding glass door of the house, offering a tray that his lunch had been served on the day before. Mrs. Kersch opened the door and took the tray. She specifically testified that she was inside; he was outside; and she did not invite him in. After she took the tray, Buzia launched his attack on her.
Buzia contends that he was an invitee because Mrs. Kersch gave him consent to enter the “dwelling”[3] by authorizing him *800 to sit in the screened area attached to the house and that his “remaining in” was not done surreptitiously. We disagree. This is not a case like Delgado, in which the consent to enter was presumed withdrawn by the fact of the attack by the defendant. In this case, Mrs. Kersch gave Buzia limited consent to enter only the porch area and specifically told him to await her husband there. Accordingly, Buzia did not have consent to enter the house when he attacked Mrs. Kersch. Cf. Johnson v. State, 737 So.2d 555, 556-57 (Fla. 1st DCA 1999) (affirming conviction of causing bodily injury during the commission of a burglary where, although convenience store was open to the public, the owner clearly told defendant he was not allowed in the area behind the cash register before he entered the prohibited area), approved, 786 So.2d 1162, 1164 (Fla.2001) (“[T]he question of whether the area behind the counter was open to the public is a question of fact for the jury to decide”). The motion for judgment of acquittal was without merit, and appellate counsel was not deficient in failing to raise the issue on appeal.
Moreover, even if the burglary conviction and attendant sentence were reversed, the felony murder conviction would remain valid, and Buzia would not be entitled to a new trial. Buzia was convicted of premeditated and felony murder. The latter conviction would not be invalidated because it rests on the valid felony robbery conviction. In addition, no new penalty phase would be required. The trial court gave no weight to the aggravator that the capital felony was committed in the course of a robbery, burglary, or kidnapping. The court, however, found and gave great weight to four aggravating factors, including CCP, HAC, and prior violent felony conviction, which are among the most serious aggravators. See Jackson v. State, 18 So.3d 1016, 1035 (Fla.2009) (stating HAC and CCP are “two of the most serious aggravators”), cert. denied, — U.S. -, 130 S.Ct. 1144, 175 L.Ed.2d 979 (2010); Chamberlain v. State, 881 So.2d 1087, 1109 (Fla.2004) (“CCP and prior violent felony conviction are considered among the more serious aggravating circumstances.”).
B. Jury Instruction on Kidnapping
In his second claim, Buzia contends that appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in giving an instruction on kidnapping — an uncharged crime— during the penalty phase. The court gave the instruction to support the aggravating circumstance of capital felony committed in the commission of or attempt to commit any robbery, kidnapping, or burglary. This was done to avoid an improper doubling problem with another aggravator.
In Turner v. State, 530 So.2d 45, 50-51 (Fla.1987), we addressed this same claim and held that the relevant statute “does not require that a defendant be charged or convicted of the enumerated felonies[;] it requires only that the aggravating circumstances be proven beyond a reasonable doubt.” Thus, giving the instruction was not error. Nor is there any prejudice. As stated previously, the trial court expressly gave the aggravator no weight but did find and give great weight to four aggravators in this case, three of which we have deemed to be among the more serious aggravating factors.
IV. CONCLUSION
In light of the foregoing analysis, we affirm the denial of Buzia’s motion for *801 postconviction relief and deny his petition for a writ of habeas corpus.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. Buzia briefly argues that the State’s reference to this part of the tape during closing argument in the penalty phase was prejudicial. However, the record shows that defense counsel objected to the reference and pointed out that this part of the tape was not in evidence. The trial court sustained defense counsel’s objection and instructed the jury to disregard the prosecutor’s remark.

. The burglary statute provides that a "dwelling” includes "a building or conveyance of *800 any kind, including an attached porch ... [and] the curtilage thereof.” § 810.011(2), Fla. Stat. (1999).